LAURENCE *et al. vs.* THE MAYOR, etc., of Savannah *et al.*

The mayor, etc., of Savannah made a contract in the form of a conveyance, by which they conveyed to a purchaser a certain lot, upon condition that the latter was to pay a stipulated amount of ground-rent at specified times; and in case of failure to pay within a given number of days, after the rent became due, the lot and premises were to revert to the grantors, who reserved the right of re-entry, to be exercised by posting a notice on the premises, and within ten days thereafter, the lot, with its improvements, was to be considered as absolutely vested in the grantors, and the estate created "was determined to all interest and purposes as fully as if the same had

not been bargained for or purchased." A person claiming under the grantee failed to pay the rent, the municipal authorities re-entered, posted notice and re-sold for much more than the ground-rent already due. A bill was filed to compel the city, after allowing for the payment of ground-rent, taxes, etc., to refund the balance to one who claimed to be the true owner under the original grantee:

*Held,* that the right of re-entry and re-sale was for the purpose of securing the amount due the city; and after the payment of this, the holder under the original grantee had an equitable claim to the balance, and a bill for the purpose of enforcing such claim was not demurrable.

December 21, 1883.

Contracts. Estates. Title. Mortgages. Municipal Corporations. Savannah. Forfeitures. Equity. Before Judge ADAMS. Chatham Superior Court. March Term, 1883.

Laurence, for himself and as guardian for his children, filed a bill against the Mayor, etc., and Murphy *et al.,* alleging, in brief, as follows:

On October 2, 1831, the Mayor, etc., sold to Caroline M. Fraser a certain lot in the city of Savannah, making her a conveyance containing the following provisions:

"To have and to hold the said lot, with all and singular the advantages thereunto belonging, unto the said Caroline M. Fraser, her executors, administrators and assigns forever; on this express condition, nevertheless, that she, the said Caroline M. Fraser, her executors, administrators and assigns, do and shall yearly and every year during such time as the said valuation money shall remain unpaid, by four equal and quarter-yearly payments, pay or cause to be paid into the city treasury of Savannah aforesaid, the sum of $48.04 as ground-rent for the use and occupation of said lot and premises, the first quarterly payment to be made on the 2d day of May, A D. 1831, next ensuing; and in case of failure herein for the space of twenty days after any of the said quarterly payments shall become due, that then the said lot and premises shall revert to the corporation of the said city, who shall immediately thereafter possess the power of re-entry; and having, by means of their proper officers, exercised such power and given a notice thereof in writing, posted on the premises, the said lot, with all improvements thereon, shall be considered, at the expiration of ten days thereafter, as absolutely reverted in the corporation, and the estate by these presents created determined to

all interest and purposes as fully as if the same had not been bargained for or purchased; any sale or incumbrance, or other act made or suffered by the said Caroline M. Fraser, her executors, administrator or assigns, or others under her or them, to the contrary thereof in any wise notwithstanding. And the said Caroline M. Fraser, for her heirs, executors and administrators, and every of them, does hereby covenant, grant and agree to and with the said Mayor and Aldermen and their successors in office, for the time being, that the said annual ground rent shall be well and truly paid into the city treasury by quarterly payments as aforesaid, according to the true intent and meaning of said ordinance and of these presents, and that in case of failure therein, it shall and may be lawful for such re-entry to be made, and for all such other proceedings to be used, as in and by the said ordinance and the condition aforesaid are pointed out and directed; the said Caroline M. Fraser in that case, for herself, her heirs, executors and administrators and assigns, and every of them, hereby renouncing and releasing all claim whatsoever, both in law and equity, to the said lot with the improvements then thereon being."

Caroline M. Fraser died testate, leaving all her estate to her sister, Rebecca M. Pooler. The latter died, leaving her brother, Robert W. Pooler, as her sole heir; and he died, leaving as his sole heirs, his wife, Mary J. Pooler, and his grandchild, Caroline M. F. Pooler, an infant. The widow administered on his estate, and also on that of Caroline M. Fraser. On February 4, 1854, the widow, as administratrix of Caroline M. Fraser, and individually, and the minor, by Mrs. Pooler as next friend, petitioned the judge of the superior court for leave to sell, and having obtained an order at chambers, said Mary J., as administratrix, sold it to one Tucker, from whom it passed through an intermediate conveyance to Murphy, as trustee for his wife for life, with remainder to his children.

It was charged that the order and sale from Mary J. Pooler, administratrix, was void as to the minor, Caroline M. F. Pooler, for want of jurisdiction, and because she was not properly before the court, nor represented nor consenting thereto, and that her half interest was never divested, but remained in her, subject to the conditions in the original deed from the Mayor, etc. It was alleged that she

afterwards married Laurence and died, leaving him and her children by him as her sole heirs, in 1874.

In 1880, Murphy, trustee, having failed to pay ground rent to the city, the municipal authorities re-entered with proper notice, etc., under the original deed, and re-sold the place for $13,650.00, the amount actually due, including taxes, being $2,109.65. .

Thereupon, Murphy, trustee, and his children, filed a bill against the municipal authorities, alleging an agreement by the Mayor, etc., to pay over the excess of the ground-rent and taxes to Murphy, trustee. The Mayor, etc., denied any such agreement, but alleged that the forfeiture to them was absolute. At the same time, they expressed a willingness, after deducting ground rents, etc., to pay the fund to such persons as might be entitled thereto; but they submitted to the court that such funds should be paid only to such persons as should have a legal right thereto, and that the decree should be so framed as to protect them. On this bill, the chancellor decreed that the forfeiture of the lot and improvements by re-entry was absolute, and the lot and improvements vested in the corporation; that they were the owners of the profits from the re-sale; that the trust estate of Murphy was at an end; and that the minors, by a guardian, were the proper persons to receive any fund that the Mayor, etc., might elect to turn over.

The present bill alleges it to be an immemorial custom, in cases of re-entry and re-sale, after paying all arrearages, taxes and charges, to pay over the balance to the owner, and that such custom enters into these contracts.

It was alleged that the sale of the one-half interest of Caroline M. F. Pooler under order of the judge, as above stated, having been void, and complainants having succeeded to her rights by inheritance, they are entitled to one-half of the proceeds, after deducting arrearages, taxes,

v 71-26

charges, etc.; but the Mayor, etc., refuse to pay such net proceeds to them.

The prayer was that the decree in the case of Murphy, trustee, *et. al.* against the Mayor, etc., might be set aside; that complainants should be decreed to be entitled to one-half of such proceeds; that the Mayor, etc., be decreed to pay it to them, and be enjoined from paying it to the Murphys; for subpœna and general relief.

On demurrer, this bill was dismissed, and complainants excepted.

JOHN M. GUERRARD; WILLIAM D. HARDEN, for plaintiffs in error.

CHISOLM & ERWIN; H. C. CUNNINGHAM, for defendants.

HALL, Justice.

The Mayor and Aldermen of the city of Savannah hold in their hands a fund arising from the sale of a lot in said city, which had been conveyed by the city to the person under whom both complainants and respondents, the Laurences on the one part and the Murpheys on the other, claim. This conveyance was upon condition that the feoffee should, at specified times, pay to the city a stipulated amount as ground rent; and in case of a failure therein for a given number of days after the payment of such rent became due, then the lot and premises were to revert to the grantor, who reserved the power of re-entry; this right of re-entry was to be exercised by giving written notice thereof, posted on the premises, and at the expiration of ten days thereafter the lot, with its improvements, was to be considered as absolutely re-vested in the grantor, and the estate thereby created, " was determined to all intents and purposes as fully as if the same had not been bargained for or purchased."

In *Swoll vs. Oliver et al.*, 61 *Ga.*, 248, this court determined that where "the city, by its proper officer, posted a

notice of re-entry on the lot according to the terms of the deed, such act would constitute a re-entry thereon, and after the expiration of ten days, would defeat the title of the purchaser." In this case the contest was between a purchaser from the city, who bought after the re-entry had been made, and parties claiming under the original purchaser; the only question made in this court was as to the title of the respective claimants, and the title of the last purchaser was maintained by the decision rendered. In the case at bar, the question is entirely different. Neither party questions that the title of the purchaser is defeated by the re-entry. The re-sale of the property brought an amount largely in excess of the claims of the city. The respondents contend that the city, under the circumstances, had an absolute property in this excess, and might dispose of it as it saw proper. The complainants, on the other hand, maintain that this right of re-entry was reserved to enable the city to collect its demands in an expeditious and summary way; that it is a substitute for the power in a mortgage to sell for its satisfaction by the mortgagee, in lieu of a sale under a regular foreclosure, and if there is a surplus after paying the debt, the mortgagee, in one instance, and the original grantor in the other, holds such surplus in trust, for the mortgagor or grantee. More precisely stated, this arrangement provides a more expeditious mode of collecting rents as they fall due than is given by any other legal remedy for that purpose; it is a substitute for such remedies. The court below held with the respondents, and upon demurrer and motion, dismissed the bill at the hearing, for want of equity.

We cannot concur in this decision, but think it should have been just the opposite, and that the demurrer and motion upon this ground should have been overruled. The city authorities seem to have taken this view of the matter; their custom seems to have been to satisfy their demand and to account to the true owner for the excess. The right reserved by the city was only a pledge or security

for the debt that might be due to it.   Casborne *vs.* Scarfe,
1 Atk., 603.   The true ground of relief against penalties,
conditions, and forfeitures, is from the original intent of
the case, where the penalty, etc., is designed only to secure
money; and the court can give, by way of recompense, all
that was expected or desired.   Peachy *vs.* The Duke of
Somerset, 1 Strange, 447.   To the same effect is Sloman
*vs.* Walter, 1 Bro. C. C., 418.   Each of these cases will be
found with copious and accurate annotations and refer-
ences to the cases, English and American, bearing upon the
question in 2 White and Tudor Lead. Cas., Equity, part 2,
p. 746 to the end of the volume.   The right to redeem
and continue the lease, even after forfeiture and re-entry,
exists whenever the lessee will pay what is due, and if the
lessor declines to receive it when tendered, the amount
will be ordered paid into court, and he will be enjoined
from ousting the tenant.   "From a very early period,
equity would, at any indefinite time, after a tenant had in-
curred a forfeiture and been ejected for non-payment of
rent at a particular time, under a stipulation in a lease, re-
lieve him upon his paying to the lessor the rent accrued
due, interest and costs, upon this principle, that as the
right of entry was intended merely as a security for the
rent, the lessor thereby received full compensation, and
was put in the same situation as if the rent had been paid
to him when it was originally due."   2 White and T. Lead.
Cas., Eq., part 2, marg. p. 788.   This principle was fully
recognized by parliament, and is embodied in statute 4
Geo. 2, ch., 28, which limits the right of redemption to
six months after recovery in ejectment by the lessor.   *Ib.*,
788,789.   In Bowser *vs.* Colby, 1 Hare, 128, 129, it was
decided that "a court of equity would relieve a lessee from
a forfeiture by non-payment of rent where there is a pro-
viso that in that case the lease shall be void, as well as
where there is a power of re-entry.   The legal effect in the
one case is, that if the landlord re-enters the lease is deter-
mined, in the other case it is determined without his re-

entry. The contract of the parties is, that in the one case the lease shall not be at end by the mere non-payment of rent, unless the landlord shall re-enter, and then it shall be at an end; and in the other case the non-payment of rent shall alone determine the lease. In both cases the same consequence is to follow, though from different acts. In both the contract is the same, in this sense, that there are certain acts to take place which are to determine the lease altogether." Prior to this enactment of parliament, when a lease had been forfeited for non-payment of rent, the only relief that could be given was by creating a new lease. Since that statute, however, this form of relief has been dispensed with, and the original lease has been allowed to continue. 2 W. and T., pt. 2, 790. There is nothing in our own legislation in conflict with this just and equitable policy.

In this case, the city, by the re-sale of the lot, gets not only the amount then due, but also secures its future rents; it gets all that it ever contracted for, and by returning to the original lessee what is over and above the amount due at the time of the re-sale, he gets nothing more than he was entitled to under his contract.

As between the other parties to this suit, the city is a mere stake-holder. The equities, if any exist between them, as well as their legal rights, can be settled by the court on the final hearing of the cause, and upon the evidence adduced at that time. The complainants in this bill have a right to be heard. They make, by their pleadings, a clear case; they are entitled to participate in this surplus fund to the extent to which they show their interest in the same.

Judgment reversed.