## LYTLE *v.* SCOTTISH AMERICAN MORTGAGE CO.

1. A "land contract" calling for ten payments aggregating $1,260, designated as purchase-money, and ten payments aggregating $2,750, designated as rental, and providing that upon the payment of the said sums conveyance in fee should be executed, created the relation of vendor and vendee, and not that of lessor and lessee.
2. Where time is made of the essence of the contract, the vendor may exercise the reserved right to rescind, when the vendee makes default.
3. Usually rescission is in toto, leaving the rights of the parties to be determined by a court of equity, and not by the abrogated contract.
4. But the law will not force parties to litigate, nor prevent them from entering into agreements to avoid litigation. They may therefore stipulate in advance as to the amount of damages to be paid if the contract is rescinded because of the vendee's default.
5. The validity of such agreement, however, is to be determined, not by the names given the stipulation, but by reference to the law applicable to liquidated damages.

6. While a valid written contract can not be contradicted or varied by parol, it is competent by such evidence to show that the writing is but a cover for usury, penalty, or forfeiture.

7. What is called rent may be shown to have been really a part of the purchase-money, or a device to obtain a penalty.

8. In contracts for the sale of land, the damages are capable of exact computation, and a stipulation by which an amount in excess of such legal damages shall be paid or retained is not enforceable.

9. A stipulation that on the vendee's default in making payments, the vendor shall retain money previously paid on account of the purchase, and that the vendee shall lose all interest in the property or improvements, amounts to a penalty and forfeiture forbidden by the Civil Code, § 3795.

10. If on rescission the vendor seeks to recover the land, he must account to the vendee for purchase-money paid in part performance of the contract by the vendee.

11. On such rescission the vendee is to be charged with the damages occasioned by his breach, and a fair rental value for the land during the time it was held in possession under the agreement.

12. If on rescission the vendor takes back the land, he must allow for improvements made by the vendee.

13. This does not lead to the conclusion that the vendor may himself be required to pay for improvements which he did not order, and which he does not desire.

14. Where, in a suit for the recovery of land on rescission of a contract of sale, the defaulting vendee claims compensation for improvements, and the vendor disputes the value of the improvements, or is unwilling or unable to pay therefor, there must be an accounting in which the rights of the parties must be adjusted. The decree should provide for a sale of the land, and direct the proceeds first to be applied to the payment of the amount found on the accounting to be due the vendor, and the surplus to the vendee.

15. If with the consent of the vendor a part of the land was sold by the vendee to a third person, and all of the purchase-price therefor was paid over to the vendor, the latter, on rescission of the original contract, must account to the vendee for so much of the payment as was in excess of the value of the land thus sold, calculated on the basis of the original contract.

Argued November 18, 1904, — Decided March 25, 1905.

Equitable petition. Before Judge Henry. Floyd superior court. July 25, 1904.

On February 1, 1899, the parties signed an instrument partly printed and partly written. It was designated as a "land contract." By it the Scottish American Mortgage Company Limited, in consideration of $275 to be paid yearly on the first of January, for the full term of ten years, "demised, leased, and rented" to Jessie C. Lytle, certain real estate in Floyd county, she being bound to pay the taxes as additional rental. It provided that on default in the payment of the taxes or rental, at the option of the

mortgage company "this contract of rental shall without notice become absolutely void, except as to the obligation of [Mrs. Lytle] to pay all arrearages of rent, . . and except that the [mortgage company] will still have the right by summary process or otherwise to collect the sums of money so due, and its liens for rent shall remain unimpaired. . . Upon the payment to it on this date of four hundred (400) dollars, and thereafter, . . in each . . year during the term of the above contract of rent, of the sum of eighty-five and 10/100 (85.10) dollars (which installments or sums of money said party of the second part agrees without option or condition to pay) in addition to the rental above stipulated for, then and in that event the said party of the first part, when all of said payments shall have been fully . . made, . . is to make to the said party of the second part, her heirs or assigns, . . title in fee simple to the premises aforesaid. . . It is distinctly understood that time is of the essence of this agreement, and that if the said party of the second part shall fail promptly to pay at maturity any one of the said purchase-money notes, or shall at any time fail to do and perform any of the conditions of the aforesaid contract of rental by her to be performed, or shall fail to pay promptly at maturity any one of said installments of rent or any taxes as aforesaid, and the said party of the first part shall have declared said contract of rental avoided as above provided, then and in either of said events, at the option of the said party of the first part and without notice to the said party of the second part, . . this agreement to convey shall be and become absolutely null and void, and all of the rights, whether legal or equitable, of the said party of the second part, under this agreement to convey or under the aforesaid contract of rental, shall be absolutely forfeited, including all moneys heretofore paid by the said party of the second part under the aforesaid contract of rental or this agreement to convey."

On June 18, 1903, the mortgage company brought suit against Mrs. Lytle, attaching this contract as an exhibit, and averring that Mrs. Lytle was in default, having failed to pay $142 of the rent due on January 1, 1902, $275 of the rent due on January 1, 1903, "and has also failed and refuses to pay $85.10 in addition to said rental due January 1, 1903;" that by agreement between the parties 15 acres of the land were sold to J. H. Orr for $500, and

that the defendant would have been entitled to a credit for the purchase-price of the said 15 acres had she complied with the agreement, but, having failed and refused to comply, by the terms of the contract petitioner has the right to declare the same null and void, preserving to petitioner the right to collect all arrearages of rent up to the date of the trial; that in view of defendant's default petitioner is only required, in equity and good conscience, to account for the money actually paid by the defendant on account of the contract, and is entitled to receive $275, the fair yearly rental as agreed upon in the contract; that upon such accounting defendant is not entitled to a credit for the proceeds from the 15 acres, the same never having become her property, and the sums actually paid by defendant not being sufficient to extinguish the rent due and owing petitioner under the contract; that the total amount paid by the defendant is $881.48, which includes everything paid, whether by way of rent, interest on rent not paid at maturity, or as purchase-money; that the amount due petitioner by way of rental up to January 1, 1903, was $1,130 without interest; that, deducting the $881.48 paid, it will be seen that defendant was indebted to petitioner on said debt by way of rent $248.52, and by the time this case is ready for trial $275 additional rent for the year 1903 will have accrued; that defendant having given petitioner the right to avoid and rescind the contract and to recover the land, except the 15 acres sold, petitioner now, upon such avoidance of the contract, offers to account to defendant for all money paid by her on account of the contract, and offers to surrender the notes given in pursuance of the contract, and to surrender the contract itself canceled, upon the payment of the balance due by the defendant to petitioner, and the surrender of the land, less the 15 acres. Wherefore, expressly waiving answer under oath, petitioner elects to rescind, declares the contract avoided, prays that it may recover the land, less the 15 acres, and for a judgment against the defendant for the amount due, and for such other and further relief as to the court may seem meet and proper.

The defendant filed a plea in which she made no objection to the rescission of the contract, but claimed that by reason of the rescission she was entitled to the value of her improvements on the land, and to a return of all sums paid by her, less a reasonable

and fair rent during the time she had been in possession of the property; and averred that the price of the land as originally agreed on was $3,200 cash, but as she could only make a payment of $400 at the time, it was agreed that the balance, $2,800, should be paid in ten annual instalments; that the interest on the deferred payments at six per cent. should be added to the $2,800, making the sum due on the deferred payments $3,601, which with the $400 cash amounted to $4,001; that thereupon she gave the plaintiff ten notes for $275 each ($2,750), and ten notes for $85.10 each ($851), making a total of $3,601, which with the cash $400 amounted to $4,001; that while the notes for $275 each were called rental, they in reality represented a part of the purchase-price. She denies that the land was worth $275 a year, but says that owing to its condition its value for rent was very small; that she has paid $859.25 of the principal debt, and is entitled to a credit for $500 additional on account of the land sold, with plaintiff's consent, to Orr, making a total credit of $1,359.35; that the 15 acres sold to Orr at $33.33 an acre was, in the original contract between the parties, valued at $15 an acre; that the land was uncleared, except about four acres; that as soon as defendant purchased it she cleared the 15 acres, put out an orchard of fruit trees on it at great expense, put it in a good state of cultivation, added to its value $300, and by reason of these improvements it was sold to Orr for $500, and that the enhancement in value was due entirely to the labor and money expended by her; that the rest of the land was in a neglected condition, covered with bushes and wild growth, washed, without fencing, and the house in bad repair; that she made improvements on the house at the cost of $100, dug a well at a cost of $100, filled the gullies and dug ditches at an expense of $100, built fences at an expense of $150, cleaned off the growth at an expense of $50, planted out peach, plum, cherry, and pecan trees, some of which are now ready to bear, and now worth not less than $1,700; that she has put at least $500 worth of fertilizers on the place, and by her money and labor in an effort to enrich and beautify the property has made it worth at least $2,000 more than when she contracted to purchase it; and that upon a rescission the plaintiff should account, not only for the purchase-money paid, but also for the improvements placed on the prop-

erty; that for the time she occupied the entire 85 acres the reasonable rental would have been $256.74; that for the time she has occupied it since the sale to Orr $300 would be reasonable rental. She prayed for an accounting, for a return of the money paid, and that the value of the improvements be set off against the plaintiff's just claim for rent, and for such further relief as she might be entitled to in equity. This plea was filed July 19, 1904.

On July 25, 1904, the petitioner demurred to the plea in so far as it sought to contradict the written contract sued upon, and in so far as it sought to recover money paid by the defendant for taxes and improvements, and to obtain a credit for the $500 received from the sale of the 15 acres. There was a special demurrer that the planting of trees, clearing the land, and digging the ditches are not such improvements as to make plaintiff chargeable therewith upon a rescission; that the allegations seeking to reduce the rental price below the contract price furnish no ground for relief, but are an effort to contradict, vary, and add to the terms of an unambiguous contract. The demurrer was specially aimed at the allegations of each paragraph of the plea. The order of the court is equally specific, and directs that many named parts of the plea between indicated words be stricken. It concludes by stating that part of the plea, "as to refunding to defendant the purchase-money paid by defendant, is not stricken," except the part which seeks to recover the $500, proceeds of the 15 acres, the part which seeks to recover taxes, and the part which seeks to recover or set off alleged improvements. At the trial the defendant offered to amend by alleging that she had built a tenant-house and dug a well at a cost of $100; that she had paid out a certain sum in order to acquire, for the use of the land sold, the possession and title to a spring, which had been contracted to be sold by the plaintiff without a warranty, and which she claimed added $200 in value to the property. She further offered to amend the prayers of the cross-petition by claiming that on a rescission she was entitled to the full value of her improvements in so far as they enhanced the value of the property returned, and that the rents were of less value than the improvements, and the plaintiff should account for the excess. These amendments were disallowed. The defendant excepted to this ruling, and to the order

of the court striking the pleas. The case was then submitted to a jury, the plaintiff introduced the notes for $275, dated February 1, 1899, and maturing the first of January, 1902–1909, one with a credit thereon, and the seven unpaid notes for $85.10, maturing 1903–1909; and a witness who testified that the 15 acres was not cleared in 1899, that the defendant had planted it in peaches, that in 1902 they were not bearing, that that may have injured the production of the land, but $2.50 would be a fair rental. The defendant assigns as error that the court refused to allow her to prove what the 15 acres were worth for rent in 1899, 1900, and 1901, except for the purpose of ascertaining what it was worth for rent in 1902, and also refused to allow the defendant, on cross-examination of this witness, to show what the entire tract was worth for rent before the sale of the 15 acres, and also what the remainder was worth after the sale; the court holding that the only question before the jury was what would be a proper reduction on account of the failure of the defendant to have the use of the 15 acres sold. It also appears that the court refused to allow the plaintiff to recover for rent accruing under the contract since the suit was filed, and limited the recovery to the rent at $275 per annum up to January 1, 1903. At the conclusion of the evidence the court directed a verdict for the plaintiff for the premises in dispute, and $60.53 as rent to January 1, 1903, requiring the plaintiff to return to the defendant the notes maturing after January 1, 1903. The plaintiff moved for a new trial, and in her bill of exceptions excepts to the order refusing the same, and to the rulings striking the pleas and refusing to allow the amendments thereto.

*Fouché & Fouché*, for plaintiff in error, cited 85 *Ga.* 748; 89 *Ga.* 508; 93 U. S. 672; 117 *Ga.* 209; 81 *Ga.* 681; 5 *Ga.* 288; 7 *Ga.* 228; 9 *Ga.* 133; 51 *Ga.* 88; 69 *Ga.* 817; 102 *Ga.* 4; 111 *Ga* 282. See also *Blitch* v. *Edwards*, 96 *Ga.* 606.

*Ross & Grace* and *T. W. Lipscomb*, contra. Parol evidence inadmissible: 74 *Ga.* 174 (3); 95 *Ga.* 759; 52 *Ga.* 448; 108 *Ga.* 655; 113 *Ga.* 1142; 83 *Ga.* 665; 112 *Ga.* 199; 66 *Ga.* 483; 60 *Ga.* 158; 72 *Ga.* 69; 69 *Ga.* 460. Vendor not liable for improvements: Civil Code, § 3123; 80 *Ga.* 395; 14 *Ga.* 134; 76 *Ga.* 706; 75 *Ga.* 556; 102 *Ga.* 1; 53 *Ga.* 18; 65 *Ga* 406; 115 *Ga.* 100; 113 *Ga.* 534.

LAMAR, J. (After stating the foregoing facts.) The mortgage company insists that the purchase-price of the land was $1,260, of which $400 was paid in cash when the contract was made; that the balance of $860 was to be paid in ten annual installments of $85.10, without interest, and that until title passed the plaintiff in error was a tenant and bound to pay $275 rent annually for ten years; that time was made of the essence; and that by the express terms of the agreement the company was entitled to the improvements and also to retain whatever was paid on account of rent in the event there was a default and the company elected to rescind. The plaintiff in error insists that there was no contract of rental; that in effect the purchase-price was $4,000; that the $275 called rental was a part of the purchase-price, which she is entitled to recover on rescission; that she was not a tenant but a vendee in possession, and that her rights are to be determined accordingly.

1. Even a lessee may in a proper case be relieved from a forfeiture. *Laurence* v. *Savannah*, 71 *Ga.* 398. But for the sake of brevity, and to avoid dealing with the case in a double aspect, it will be well in the outset to determine whether the contract was a lease or a sale. Having regard only to the form of words, it was both. But mere names will be ignored. Contracts must be construed according to their legal effect. It has therefore often been held that stipulations for paying rent or hire during a term for the use of personal property, with a provision that on making the last payment title shall vest in the so-called lessee, constitute a conditional sale. *Hays* v. *Jordan*, 85 *Ga*, 749. There is no reason why a similar rule should not apply to similar contracts in relation to land. Compare Hill *v.* Sidie, 116 Wis. 602, 96 Am. St. Rep. 1011. This was not a case where the defendant was a lessee having merely an option to buy, but she was in possession under a contract of sale, with a part of the purchase-money paid. This created the relation of vendor and vendee, not that of lessor and lessee. The "land contract" was a bond for title, in which time was made of the essence.

2. On the vendee's default the vendor was entitled to exercise the reserved right to rescind. *Ellis* v. *Bryant*, 120 *Ga.* 890; Civil Code, § 3675. The plaintiff in error does not resist the exercise of this right, but denies that the vendor is entitled to

charge or retain the $275 called rent in the rescinded agreement.

3. When a contract is rescinded, the parties are not to be left where the rescission finds them.    The original status must be restored, or an equivalent therefor must be provided in the contract or furnished by the law.    Civil Code, §§ 3710, 3711, 3712. Generally speaking, rescission is in toto.    It abrogates the contract not partially but completely.    It leaves the rights of the parties and the amount of the damages, if any, to be determined, not by the rescinded contract, but by the court of equity.    Cf. Drew *v.* Peddlar, 87 Cal. 443, 22 Am. St. Rep. 258.

4. But equity will not force parties to litigate, nor will it prevent them from entering into agreements to avoid litigation.    Civil Code, § 3935.    There is no reason, therefore, why they may not agree in advance upon damages to be paid in the event of a breach, or upon an amount to be paid for rent on rescission of a contract of sale.

5. Whether such an agreement can be enforced will depend, however, among other things, on the question as to whether the rent was liquidated damages or so unreasonable as to come within the prohibition against penalties and forfeitures.

6. If the amount named as rent was in excess of a fair and reasonable value for the use of the property, or if what was really a part of the purchase-money was given the name of rent for the purpose of enabling the vendor to retain it as rent when he could not retain it as purchase-money, then names will be ignored, the figures named in the contract will be disregarded, unreasonable liquidated damages will be declared to be a penalty, and the fair rent will be determined by proof of the real value of the land, rather than by reference to the excessive sum named in the rescinded contract.    Nor does this mean that the vendee will be permitted to evade the rule that one can not by parol contradict or vary a *valid* written instrument.    Civil Code, § 5201.    Even parol testimony is admitted to enable one to show that a written instrument is not valid, but void.    Civil Code, § 5203.    It is always permissible to show that a paper is but a cover for usury, penalty, forfeiture, or other illegal advantage to one of the parties. For if the law did not sedulously disregard form and seek for substance, nothing would be easier than its evasion by giving innocent names to prohibited acts.

7. What is called rent may be shown to be usury. *Baggett* v. *Trulock*, 77 *Ga.* 369 (2). What is called rent may be shown to be unreasonable liquidated damages. What is called rent may be shown to be purchase-money, if as purchase-money it could not be retained by the vendor on rescission.

8–11. If, then, the contract was one of sale, if what was called rent may be shown to be part of the purchase-money, the remaining question is, can the vendee on rescission caused by her default secure a return of purchase-money, or compensation for her improvements to the extent they enhanced the value of the land ? According to 2 Pom. Eq. Jur. 445, this ought to be a very plain and simple matter. "But in the face of the authorities it is impossible to be answered in any general and certain manner." Where one has contracted to buy but has paid nothing, his failure to perform allows the vendor to take advantage of the provision for rescission, and to declare the contract, with all of its incidents, at an end, and thereupon to recover the property. The vendee has paid nothing, and has no equity to be preserved. But where the vendee has entered and made improvements, or where he has paid a part of the purchase-money, he has acquired an interest in the land. This interest is property. He can not be deprived of such property except by virtue of some valid contract. It can not be done by way of penalty or forfeiture. In the sale of land on credit where the vendor retains title, he has not the absolute estate, but is a trustee holding the title only as security. For many purposes the transaction may be treated in equity as though the vendor had made a deed to the vendee and the latter had thereupon given a common-law mortgage to secure the purchase-money. Thus treating it, the case is directly within the principle of the rule declared in one of the earliest and most signal victories won by equity over the hard literalness of the law. "Once a mortgage always a mortgage." If a mortgage when made, the instrument did not become a deed on a subsequent default in payment of the secured debt. The mortgagor's failure to pay was not allowed to work the confiscation called for by the terms of the conveyance. At first his equity of redemption could be barred only by strict foreclosure, and on his failure to redeem by a date named in the decree rather than by the time originally named in the mortgage. In modern times the principle has been so extended as to relieve

the mortgagor from the necessity of making the payment himself, but preserving his equity until it is foreclosed by means of a sale. This in effect prevents a forfeiture until the equity is shown to be valueless by the results of a public sale under foreclosure.

As in a mortgage, so in its equitable equivalent, a conditional sale of land, a forfeiture will not be enforced even for the vendee's default.    There is no difficulty in making an exact computation of the damages.    Any stipulation that more than these damages are to be paid or retained can not be enforced in a court of equity, which "regards property as a mere pledge for a debt, and will not allow either a forfeiture of the property pledged, or an augmentation of the debt, as a penalty for non-performance." 1 Pom. Eq. Jur. 446; Civil Code, § 3795.

Of course, where the vendee makes default, he can not take advantage of his own wrong so as to give himself a standing as plaintiff in an action to recover for improvements or purchase-money paid in part performance of the contract of sale.    Such claim can only be asserted defensively, where the vendor by exercising the right of rescission has clothed the vendee with the correlative right to be restored to his status.    Some cases qualify this rule, holding that, even as a defendant, the vendee has no right to a return of the purchase-money or compensation for improvements, as against a vendor who had been ready, willing, and able to convey upon compliance by the vendee with the terms of the sale.    Those holding this view insist that not to enforce a stipulation for forfeiture is to interfere with the right of contract; that to permit the vendee as plaintiff or defendant to recover the value of improvements made or to regain money previously paid leaves the vendor where he can not know whether the land is sold or not; forces him during the credit period to be ready at all times to refund the money paid; enables the vendee to take advantage of his own wrong, so that if the land increases in value he can insist on performance, while if the market price declines he will cease to make payments, and upon the exercise of the reserved right to rescind, the vendee will then demand the return of what has been previously lawfully paid, or seek reimbursement for improvements which have become a part of the real estate. But if it be admitted that this rule is hard, the contrary would be still harder.    It would ignore the important fact that not only

the vendee but the vendor has an option. It is uncertain which remedy he will pursue in case of default. If the land has decreased in value, he may still hold the vendee for the purchase-money. If the land has enhanced in value, the vendor ought not to be allowed, for a breach of the same contract, to increase his rights by choosing his remedy. The court stands between the two to do complete equity to each. To the extent of the land sold, the improvements thereon, the money in the hands of the vendor received of the vendee, and also to the extent of the vendee's general estate, the law guarantees the vendor against loss if he sues to recover the purchase-price. He is not obliged to rescind. But when he does exercise that right, he discharges the vendee from liability under the contract, sets aside the sale, and is entitled to a return of the property subject only to the condition that as his status has been restored he must also restore the status of the vendee. Civil Code, §§ 3924, 3712. When the vendee sets up any right, he is also bound to recognize that of the opposite party, and is equally bound to do equity before he can secure relief. He is not entitled to a return of his purchase-money until he has allowed, as a deduction therefrom, all damages caused by his breach — one element of which will be the fair rental value of the property during the time he occupied it, even up to verdict. But when he does this he has done all that the law requires. Damages for the breach, payment of the rent, and a return of the land restore the vendor to his status so far as the value of the land and the sum in hand will warrant. After being granted such complete equity, he should not be heard to complain if the vendee gets only the balance of the purchase-money previously paid on account of a contract which the vendor has voluntarily elected to rescind and set aside.

But there is still another line of rulings, holding that the vendee must be free from fault before he is entitled to recover for improvements or to the return of purchase-money. Others hold that since in such a contract time is not of the essence, the vendee after default may, within a reasonable time, tender the balance due, prevent the forfeiture, and secure his equity of redemption. In other words, by his tender he puts himself again in the right, and being in the right relieves against the penalty and forfeiture imposed only on one in default. But the prohibi-

tion against the exaction of penalty and the enforcement of forfeiture is not alone for the benefit of those who have kept their contracts. They do not need it. The effort to enforce a penalty and forfeiture is generally against the party who is delinquent. But if those who have met their obligations do not need the rule, and if those in default can not secure protection, it may as well be abrogated. While many courts have taken a different view of this subject, the decisions in this State are to the effect that before the vendor on rescission can recover the property sold, he must account for so much of the purchase-money as has been paid.

12. In principle this involves the obligation to make compensation for improvements. The duty to return money is no greater than the duty to return money's worth. Here the plea alleges that the vendee has paid $1,359 on account of the purchase-money. And if she is entitled to that, there is no reason why in equity she is not equally entitled to reimbursement for the $2,000 enhancement in value as the result of her money and labor in improving the land.

13. This does not lead to the conclusion that the vendor can be compelled to pay for costly changes which he did not order and does not desire, and which, though valuable, are not of a character useful to him. Such a result is obviated by the terms of the decree. If the vendor elects to take back the land, he must return the purchase-money less damages and rent. If the land has been improved, he must allow the vendee for the enhancement in value occasioned thereby, before he can take the land thus improved. But the vendee can not force the vendor to pay for the building or other meliorations. When the vendee asks compensation therefor, another factor is injected into the case, whereby he loses the absolute right to the purchase-money and forces an accounting under which he can secure only what legally comes to him on a sale of the property. The rights of the parties must be adjusted; and upon the vendor's paying the vendee what is equitably due for improvements and return of purchase-money, the vendor has the option to take the land under the terms of the rescinded contract. If he does not desire to exercise this option, the property should be sold, the proceeds should be first applied to the payment of what is due the vendor, and the balance should

be paid over to the vendee. In this way the rights of both parties are fully preserved. The vendor is not obliged to buy the improvements, though to protect his interest he may use his special judgment against the land as cash at the sheriff's sale. At the sale the vendee also may get the benefit of the enhanced price due to the improvement. Compare Civil Code, §§ 5087, 5432; Acts 1897, p. 79 ; 16 A. & E. Enc. Law (2d ed.), 107 (c).

15. It is not necessary to consider at any great length the effect of the vendee's sale of the fifteen acres for $500, with the consent of the vendor. That part of the land may have been the best or the worst, or an average, of the tract. What it was worth at the time of the contract the vendor is entitled to retain out of the $500 paid, to be applied as credit on the purchase-money note. If because of improvement made thereon by the vendee or her efforts, she was able to sell at higher price, she is entitled to the benefit, and to that extent should be allowed credit as for any other money paid the vendor.

As to the right to purchase-money and compensation for improvements, see *Blitch* v. *Edwards,* 96 *Ga.* 606, 610 ; *Glisson* v. *Heggie,* 105 *Ga.* 33 ; *Commercial Co.* v. *Campbell,* 111 *Ga.* 390 ; *McDaniel* v. *Gray,* 69 *Ga.* 434 ; *Dukes* v. *Baugh,* 91 *Ga.* 33 ; *Bryant* v. *Hambright,* 9 *Ga.* 133 (4) ; *Jones* v. *Snider,* 99 *Ga.* 276 ; McCarty *v.* Moorer, 50 Tex. 287 ; Eberling *v.* Verein, 77 Tex. 339 ; Edgerton *v.* Peckham, 11 Paige, 352 ; Westhafer *v.* Patterson, 120 Ind. 459 ; Chobat *v.* Winter Park Co., 34 Fla. 258, 43 Am. St. Rep. 192 ; Griffeth *v.* Depew, 3 A. K. Mar. 177 ; 13 Am. D. 141; Gilbert *v.* Greewell 13 Ind. 484, 74 Am. D. 266; Phelps *v.* Brown (Cal.), 30 Pac. 774; Johnston *v.* Whittemore, 27 Mich. 463 ; Drew *v.* Peddler, 87 Cal. 443; 22 Am. St. R. 257; Johnson *v.* Evans, 50 Am. Dec. 674; In re Dagenham Dock Co., 8 L. R. Chan. App. 1022.

*Judgment reversed.    All the Justices concur.*