## S98A1868. WATKINS et al. v. MADDOX MEDICAL ASSOCIATES, INC.

(509 SE2d 614)

HUNSTEIN, Justice.

Maddox Medical Associates, Inc. (MMA), as the alleged assignee of Donald Sams, brought an action against Larry and Rebecca Watkins, among others, seeking a declaration of its rights under two agreements executed by Sams and the Watkinses regarding commercial real property in East Ellijay. MMA also sought money damages for breach of contract and wrongful interference with land as well as ejectment and other equitable relief. The trial court granted summary judgment to MMA and this appeal ensued. Because we agree with appellants that genuine issues of material fact remain for resolution, we reverse.

1. Appellants correctly assert that fact issues remain whether a valid assignment occurred between MMA and Sams. The agreements executed by Sams and appellants gave Sams the right to transfer and assign his rights and obligation "upon obtaining the prior written consent of [appellants], which consent shall not be unreasonably withheld." The record reveals that appellants' counsel wrote Sams a letter on May 29, 1997 setting forth the past-due sums owed to appellants under the agreements between the parties. According to MMA's brief, David Pierce, the principal shareholder of MMA, met with appellants and their counsel on June 11, 1997. The evidence conflicts as to what was discussed at this meeting, but according to Pierce, he believed appellants wished for him to purchase Sams' interest in the agreements. Pierce, on behalf of MMA, approached Sams and on June 19, 1997 Sams assigned his interest in the agreements to MMA. It is uncontroverted that no written consent for this assignment was obtained from appellants. On June 20, the day after the assignment, counsel for MMA and Pierce sent appellants a letter informing them of the assignment and stating that counsel's clients "request and anticipate your consent to the transfer of interest to [MMA], and would appreciate your forwarding a writing to that effect." In his affidavit Pierce averred that at the time this letter was sent, he had "been wholly unsuccessful in obtaining a response from [appellant Larry] Watkins and [was] uncertain whether Mr. Watkins had abandoned the proposal or was simply unsure of whether and how to proceed."

Given the evidentiary conflict regarding the discussion at the June 11 meeting, MMA's own evidence reflecting it obtained the assignment while its primary shareholder entertained an uncertainty whether appellants had abandoned the proposal discussed at the June 11 meeting, and the relatively brief time frame involved between the parties' June 11 meeting and the June 19 assignment

from Sams, we agree with appellants that even if they had been requested to consent to the assignment, a genuine issue of material fact remains for the factfinder whether any withholding of consent was unreasonable. See *Stern's Gallery &c. v. Corporate Prop. &c.*, 176 Ga. App. 586 (4) (337 SE2d 29) (1985).

2. We further agree with appellants that even if the assignment to MMA was valid, genuine issues of material fact remain whether Sams retained any interest to assign to MMA or whether Sams had forfeited his interest through abandonment prior to the assignment. The trial court held that the agreements between Sams and appellants created an equitable estate in Sams in the commercial real estate, see *Chilivis v. Tumlin Woods Realty Assoc.*, 250 Ga. 179 (2) (297 SE2d 4) (1982) (discussing bond for title), which could not be forfeited through the unilateral act of appellants; hence, because appellants had not undertaken legal steps to foreclose upon that equitable interest, MMA as Sams' assignee retained an equitable interest in the property, including the right to possession.

It is uncontroverted that appellants did not institute any judicial or non-judicial foreclosure action against Sams regarding his equitable interest in the property. However, there was evidence in the record that after the agreements were executed, Sams was convicted on Federal tax crimes and incarcerated. In October 1996, in response to Sams' straitened financial situation, appellants agreed to a temporary reduction in the monthly payments. An agreement to that effect was executed by the parties and reflected that "Diane Sams, having Power of Attorney for Donald D. Sams, is in agreement to the above stated amendment and will comply with all terms." Sams, appellants, and Ms. Sams signed the agreement. Appellants adduced evidence that no payments were made by Sams on the property after December 1996; that Ms. Sams had several conversations with Mr. Watkins regarding her inability to make the payments; that in March 1997 Ms. Sams, without notice, closed the business conducted on the property and removed its equipment; and that appellants reentered the premises, changed the locks, and restored the disconnected utilities to the property. Although, as noted above, appellants did not contact Sams directly about the failure to comply with the agreements until their counsel sent him a letter dated May 29, 1997, Sams acknowledged in his deposition that he knew at least as early as April or May that no payments had been made under the agreements. Sams further deposed that he had signed his power of attorney over to Ms. Sams in regard to the operation of the business on the premises in issue and the occupancy of that property.

As noted in Pindar, Ga. Real Estate Law and Procedure, § 20-72 (4th ed. 1993), if the document constituting a bond for title contains no power of sale, "the equity of the purchaser must be foreclosed by

some legal proceeding, unless barred by adverse possession or abandonment." (Footnote omitted.) Id. at 287-288. Our review of case law affirms the conclusion drawn in Pindar, supra at fn. 1, that the case on which MMA relies, *Lytle v. Scottish Am. Mortgage Co.*, 122 Ga. 458, 467 (50 SE 402) (1905) (equitable interest in property under bond for title can be barred solely by legal foreclosure proceedings) is not consistent with well-established Georgia law regarding the effects of the purchaser's abandonment of the property, namely, that upon the failure of the purchaser to make payments as they fall due, "the grantor ha[s] the right to rescind the contract and, among other remedies of the grantor, [h]as the right to re-enter and take possession where the premises [are] vacant." *Smith v. Smith*, 208 Ga. 300, 302 (66 SE2d 711) (1951). See also *Douglas v. Vourtsanis*, 203 Ga. 64 (1) (45 SE2d 203) (1947); *Wheeler v. Layman Foundation*, 188 Ga. 267 (4) (3 SE2d 645) (1939); *McDaniel v. Gray & Co.*, 69 Ga. 433, 435 (1882). Accordingly, we decline to follow *Lytle*, supra. While we agree with MMA that the facts in those cases where abandonment has occurred involved more compelling circumstances than those present here, we do not agree that those facts so distinguish the principle in these cases that it is proper to hold as a matter of law that there was no abandonment of the property under the evidence in this case.

Therefore, we hold that the trial court erred by ruling that appellants' failure to undertake legal steps to foreclose the equitable interest of MMA as Sams' alleged assignee entitled MMA to the right to possession as a matter of law. Because genuine issues of material fact remain on the issue of Sams' abandonment of his interest in the property, summary judgment was improper.

*Judgment reversed. All the Justices concur.*

DECIDED DECEMBER 4, 1998 —
RECONSIDERATION DENIED DECEMBER 18, 1998

*King & Croft, F. Carlton King, Jr., Thomas A. Croft,* for appellants.
*Clifford S. Lancey,* for appellee.