In the matter of Ernest Carroll
**PRESCOTT, Debtor.**

**Larry I. Adams, Movant,**

v.

**Ernest Carroll Prescott, Respondent.**

**No. 01–20463.**

United States Bankruptcy Court,
S.D. Georgia,
Brunswick Division.

Sept. 26, 2001.

William S. Orange, III, Brunswick, GA, for Plaintiff/Movant.

James D. Benefield, III, Brunswick, GA, for Defendant/Respondent.

### ORDER ON DEBTOR'S MOTION TO SELL PROPERTY AND MOTION FOR RELIEF FROM STAY

LAMAR W. DAVIS, Jr., Bankruptcy Judge.

Debtor Ernest Carroll Prescott ("Debtor") filed his Chapter 7 case on April 27, 2001.

In 1996, Debtor and Movant Larry I. Adams ("Adams") entered into a Contract for Deed whereby Adams agreed to sell, and Debtor and his wife agreed to purchase, a tract of land in Camden County, Georgia. The contract, which was prepared by Adams's attorney, called for a purchase price of $16,500.00 and provided in relevant part as follows:

(a) Purchasers' interest in the aforedescribed property is that of a Contract for Deed thereto with no equitable rights of redemption nor any ownership thereto until the full purchase price has been paid as provided for herein.

(d) If the Purchasers shall fail to perform under the terms of this contract, the Seller, immediately after such default, shall have the right to declare the same forfeited and void, and retain whatever may have been paid hereon and all improvements that may have been made upon the premises, excepting movable personal items, as reasonable rental payments for the premises, and consider and treat the Purchasers as tenants holding over without permission and may take immediate possession of the premises, and remove the Purchasers therefrom. However, sixty (60) days prior to declaring a forfeiture, Seller shall give Purchasers written notice of such default and Seller's intentions of declaring the contract forfeited and Purchasers shall have the right during said sixty (60) day period to cure the default.

Debtor's Exhibit A, Contract for Deed.

Debtor subsequently became delinquent in the payment of his obligations to Adams. On November 9, 2000, Adams attempted to notify Debtor and his wife by mail pursuant to the terms of the Contract for Deed that they were in default, that the entire outstanding indebtedness in the amount of $12,815.33 was due, and that if they failed to pay that balance within sixty (60) days, Adams would deem all prior payments to be "reasonable rental payments for the premises and thereafter consider [Debtor] to be a tenant holding over without permission" after which Adams would "declare the Contract for Deed forfeited and void and ... take immediate possession of the premises and remove [Debtor] therefrom." Movant's Exhibit 1, Letter from Adams to Prescott.

Paragraph (g) of the contract provides that notice to terminate or enforce the contract would be conclusively presumed to have been properly served if such notice were mailed to the address specified in the

contract, 1252 Deerwood Circle, Waverly, Georgia, where debtor resided at the time the contract was executed. Debtor testified that he did not receive the notification, and the United States Postal Service returned an unopened envelope addressed to Debtor and one to his wife bearing their names and the address of the property, 40 Hickory Bluff Road. Despite the contract term providing a fail safe address for assuring conclusive presumption of notice, Adams made no further attempt to send notice to Debtor.

Sometime in February 2001, Debtor told Adams that he had a purchaser who was willing to buy the land and pay off the debt. Adams refused to accept a payoff and filed a dispossessory action. A state court order dated April 3, 2001, was entered granting the dispossessory warrant and ordering possession of the premises to be turned over to Mr. Adams. This order was not signed, however, until approximately a week after the Debtor's Chapter 7 case was filed and the automatic stay was in effect.

Adams acknowledges that he is not in a position to enforce his rights in the contract pursuant to the state court order. He contends instead that all Debtor's rights in the property were terminated sixty (60) days after November 9, 2000, when Debtor failed to pay off the balance and that the February offer to tender payment was irrelevant for this purpose because it occurred more than sixty (60) days after the notice was given.

The question is whether Prescott retains an ownership interest in the property which he may sell or whether Adams, as a matter of state law, terminated any remaining interest Debtor might have in the property by virtue of the November 9, 2000, letter to Debtor.

## CONCLUSIONS OF LAW

■ The law of Georgia applies to determine property rights in this bankruptcy proceeding. *See Butner v. United States,* 440 U.S. 48, 55–56, 99 S.Ct. 914, 918, 59 L.Ed.2d 136, (1979) (stating that property interests in bankruptcy are generally determined by state law).

1. *Debtor retains an equitable right of redemption in the property because Adams could not have terminated Debtor's interest in the land in the manner provided in the contract.*

■ The contract is styled "Contract for Deed." A contract for deed under Georgia law "is for all practical purposes no different from a bond for title." *Chilivis v. Tumlin Woods Realty Assoc.,* 250 Ga. 179, 183, 297 S.E.2d 4, 8 (1982) (emphasis omitted). Under a bond for title, "an equitable estate arises in favor of the holder of the bond limited by the amount of his investment." *Id.* at 182, 297 S.E.2d 4; *see also Roberts v. Verdi (In re Verdi),* 244 B.R. 494, 497 (Bankr.M.D.Ga.2000) ("A bond for title is a contract signed by the owner of land, reciting that he has received a certain part of the purchase money for the described land, and binding himself in a penal sum to make a good title to the purchaser when the remainder of the purchase price is paid." (quoting *Kemp v. Parks,* 227 Ga. 319, 322, 180 S.E.2d 350, 353 (1971) (Felton, J., dissenting) (citation omitted))).

■ Although the contract states that the purchasers were to have acquired no equitable rights of redemption or ownership until the entire purchase price had been paid, the same sentence provides that the purchasers' rights under the contract were those of purchaser under a contract for deed. Thus, the contract provision is unclear: it could be construed either as a contract for deed in all respects or as a

contract for deed in all respects other than the grant of a right of equitable redemption. Doubtful terms in a contract are to be construed most strongly against the drafting party. *E.g., In re Joyner*, 74 B.R. 618, 623 (Bankr.M.D.Ga.1987). Because Adams testified that the contract was prepared for him by his attorney, the contract must be construed as a contract for deed with all the attributes of a bond for title.

■ When a bond for title does not provide a power of sale, the interest of the buyer thereunder can be terminated only by adverse possession, abandonment, or judicial foreclosure. *See Watkins v. Maddox Med. Assocs.*, 270 Ga. 404, 405–06, 509 S.E.2d 614, 616 (1998). Because no evidence has been presented in this matter of any adverse possession of the premises by Adams or abandonment thereof by Debtor,[1] successful prosecution of a judicial foreclosure action was necessary to strip Debtor of any residual property rights. *See In re Verdi*, 244 B.R. at 497 (concluding that debtor's realty interest was property of estate because debtor had not abandoned property and debtor's interest, which was "akin to ... bond for title," had not been foreclosed by legal proceeding with respect to installment land sale contract).

■ In the present case, Debtor's interest in the land is equitable title akin to that of the holder of a bond for title in which title remains in the maker of the bond only as security for such payment. *Chilivis*, 250 Ga. at 182–83, 297 S.E.2d 4. Because Adams may not now, as a result of 11 U.S.C. § 362, enforce his rights in this contract pursuant to the state court dispossessory order or in a foreclosure

proceeding, Debtor's interest in the land remains intact.

2. *Even if the contract for deed were to be construed as containing no equitable right of redemption and Adams needed only to notify Debtor of the dispossessory action pursuant to contract terms, Adams's November attempt to give notice to Debtor that he intended to dispossess Debtor and take possession was insufficient.*

■ Proof that a letter, properly directed and stamped, was mailed to the last known address of an addressee satisfies due process because it was "reasonably calculated" to provide notice, *Greyhound Lines, Inc. v. Rogers (In re Eagle Bus Mfg., Inc.)*, 62 F.3d 730, 735–36 (5th Cir. 1995), and creates a presumption that the letter was received by the addressee, *Hagner v. United States*, 285 U.S. 427, 430, 52 S.Ct. 417, 419, 76 L.Ed. 861 (1932).

The presumption of receipt may be rebutted, however, by producing evidence which would "support a finding of the non-existence of the presumed fact." *In re Hobbs*, 141 B.R. 466, 468 (Bankr.N.D.Ga. 1992) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dodd (In re Dodd)*, 82 B.R. 924, 928–29 (Bankr.N.D.Ill.1987) (citing 10 Moore's Federal Practice, ¶ 301.04[2] (2d ed.1987))).

■ Mere denial of receipt is insufficient to rebut the presumption of receipt. *See id.* at 468–69 (stating that majority of courts take this view). Many courts characterize "mere denial" as just that: denial without additional facts that point to the credibility of the addressee's denial. *See, e.g., In re Euston*, 120 B.R. 228, 230–31

---

1. Debtor's mobile home was repossessed and removed from the premises and Debtor no longer resides there. However, abandonment connotes an intentional affirmative act by debtor evidencing no residual interest in or claim to property. Here, Debtor has done nothing to suggest a voluntary abandonment of his interest in the property.

(Bankr.M.D.Fla.1990) (finding denial insufficient to rebut in light of other facts, including lack of direct testimony by addressee, that notice was not returned by post office for inability to deliver, and that correct address was on notice); *Moody v. Bucknum (In re Bucknum),* 951 F.2d 204, 210 (9th Cir.1991) (noting that bankruptcy creditor had "timely and independent knowledge that his rights [were] at risk and yet [did] not act in time to protect them" but "[held] back his complaint in reliance upon actual notice"); *In re Longardner & Assocs.,* 855 F.2d 455, 459–60 (7th Cir.1988) (weighing addressee's statement that he did not receive actual notice of bankruptcy confirmation hearing against facts that his attorney had received notice and that notice to addressee was not returned for nondelivery); *Osborn v. Ricketts (In re Ricketts),* 80 B.R. 495, 497 (9th Cir. BAP 1987) (weighing creditor's actual knowledge of bankruptcy filing and attorney's failure to examine debtor's file against creditor's submission of affidavit declaring notice not received). The "mere return" of an unopened certified letter may also be insufficient to rebut the presumption of notice. *See Ga. Underwriting Assoc. v. Crenshaw,* 202 Ga.App. 610, 610–11, 414 S.E.2d 915, 917 (Ga.Ct. App.1992) (balancing totality of facts against addressee's statement that he had not received notice, finding addressee's denial of receipt wanting, and implying that alleged nonreceipt of certified letter mailed to most recent address provided by attorney was willful refusal to accept letter).

 On the other hand, *"direct* testimony of nonreceipt," in combination with other evidence, may be "sufficient to support a finding that a mailing was not received ... thereby rebut[ting] the presumption accorded a proper mailing." *In re Hobbs,* 141 B.R. at 468 (quoting *In re Dodd,* 82 B.R. at 928–29).

In the present case, there is evidence sufficient to remove the presumption of receipt. First, Debtor directly testified that he had not received notice. Second, the letter was returned for nondelivery. Third, no evidence has been presented to indicate that Debtor refused to accept delivery of the certified letter of notice; in fact, Debtor no longer resided at the location where delivery was attempted. Finally, Adams, whose attorney drafted the Contract for Deed between the parties, had at his disposal a contractually agreed address to which to send notice. Had Adams addressed the notice to that location, the notice would have been conclusively presumed to have been received. Under the circumstances, mailing the notice to the property address, receiving notice of nondelivery, and failing to send the notice to the address provided in the Contract for Deed or to Debtors' then current address was not a delivery attempt "reasonably calculated" to provide notice.

## ORDER

Pursuant to the foregoing IT IS THE ORDER OF THIS COURT that Debtor retains a residual property interest and is permitted to sell his interest. From the proceeds of sale, Adams' unpaid principal balance, together with interest until the date of closing, shall be paid. All other liens and ordinary and customary reasonable expenses shall be paid, and the net proceeds shall be remitted to the Trustee.