## PEARSON v. BROWN.

1. An assignment of error upon the admission of evidence can not be considered unless the evidence alleged to have been illegally admitted be set forth literally, or its substance clearly stated, either in the motion for a new trial or in the bill of exceptions brought to this court.

.2. That the maker of a promissory note, after its maturity, addresses to the payee one or more letters in which he asks for indulgence and promises to pay the note if its collection is not pressed, will not operate to estop him from subsequently setting up the defense of partial failure of consideration, notwithstanding the facts upon which this defense is based were well known to him at the time he wrote the payee to the effect stated.

Submitted October 18, — Decided November 18, 1898.

Affidavit of illegality. Before Judge Hart. Putnam superior court. March term, 1898.

*Jenkins & Lewis,* for plaintiff in error.
*W. T. Davidson,* contra.

SIMMONS, C. J. 1. Complaint is made in the motion for a new trial that "certain letters, six in number, were illegally admitted to the jury, over objection of counsel" that there had been no sufficient proof of their execution, the same having been "offered as letters from the defendant to the plaintiff." None of these letters are set forth in the motion nor the contents thereof stated, the movant simply making the above-quoted reference thereto, and adding that "they have been briefed and will appear in the brief of the evidence filed with this motion, and marked and identified as letters 1 to 7." This is not a sufficient assignment of error. *Western Union Telegraph Co.* v. *Michelson,* 94 *Ga.* 436. We will therefore pass to a consideration of such points as are properly presented for adjudication.

2. It appears that the defendant bought of the plaintiff a mare, giving in payment therefor a promissory note secured by a mortgage. Some considerable time after the maturity of this note, a number of letters, purporting to have been written by the defendant and addressed to the plaintiff, were received by the latter by due course of mail. In these letters the writer requested indulgence, promising payment of a balance due on

the note as soon as possible, if its collection was not pressed. None of these repeated promises being fulfilled, the plaintiff finally sought to foreclose the mortgage given him. In defense to the action, the defendant alleged that shortly after the mare was delivered to him, it was discovered to be unsound and diseased, and consequently, the animal having been sold on a warranty that it was sound and well, the consideration upon which his promissory note was given had partially failed. In submitting to the jury the issue thus presented, the trial judge instructed them that "if they should find that defendant, Pearson, after the maturity of the note, and with the knowledge of the defects in the mare, wrote letters to the plaintiff, Brown, asking for more time in which to pay the balance due, and also promising to pay the balance at some future time, he would then be estopped from now setting up and pleading a failure of consideration, and they should find for the plaintiff." It is insisted here that this charge was erroneous, "because the law of estoppel is not applicable to the facts of this case, for the letters, even if they admit owing the debt, would be nothing more than an admission, and would simply be a circumstance for the jury to consider, like any other evidence before them." We think the point thus made a good one. It does not appear that there was any novation of the original contract between the parties, whereby, in consideration of the time of payment being extended, Pearson obligated himself by a new promise to pay the note. On the contrary, it would seem that while, upon his urgent solicitation, Brown refrained from taking any legal steps to collect the note, he never, by any agreement to extend its payment for any definite period, surrendered his right to resort to his legal remedies at any time he saw proper to do so. Nor can it be said that, relying upon the naked promise of Pearson to pay the note as soon as possible if he was not pressed, Brown has suffered injury, or has been placed in any worse position than he otherwise would have occupied. Clearly, therefore, the doctrine of estoppel can not be invoked in his behalf.

As pointed out in the very helpful brief filed in behalf of the plaintiff in error, none of the cases cited and relied on by the

defendant in error can be regarded as controlling upon the question here presented. In the first of these, *Edison General Electric Co.* v. *Blount*, 96 *Ga.* 272, it appeared that the defendants, with a full knowledge that the electric plant built for them was defective and unsuited to the use intended, and "while a controversy was pending between them and the contractor as to the terms of settlement, executed and delivered to the latter their promissory notes" for a balance claimed to be due under the contract. Accordingly this court held that, under the circumstances recited, the giving of the defendants' promissory notes amounted to a waiver of all defects known to them at that time. The case of *Harder* v. *Carter*, 97 *Ga.* 273, follows this ruling, as does also that of *Lunsford, Maxwell & Co.* v. *Malsby & Avery*, 101 *Ga.* 39. In *American Car Co.* v. *Atlanta Street Railway Co.*, 100 *Ga.* 254, there was a distinct novation of the original contract, in that the defendants, with knowledge of the alleged defects in property purchased of the plaintiff, procured an extension of the time of payment of the purchase-price as fixed by the note originally given, and voluntarily executed another note in renewal of the first, thereby waiving the defense sought to be set up of failure of consideration. In the case at bar, it clearly appears that the defendant, at the time he executed his promissory note, did not know that the mare purchased by him was diseased, so it can not be said that, by thus closing the trade with the plaintiff, this defect in the animal was voluntarily waived. There was, subsequently to the time the note became due and after the defective condition of the mare was discovered by the defendant, no new promise on his part, based upon a valuable consideration, which could operate as a novation of the original contract. No implied waiver can be inferred from a naked promise to pay which is not legally binding upon the person making the same. That is to say, such waiver, if any, would share the fate of the promise, and would fall therewith, if the promise itself was incapable of enforcement. Suppose, for instance, the defendant had written to the plaintiff, calling attention to the diseased condition of the mare and stating expressly that he would waive the defect and pay the note regardless of this fact, if not

immediately pressed for payment. Even in that event, if there was no consideration for this voluntary offer, the defendant would not be legally bound thereby. See, in this connection, 28 Am. & Eng. Enc. L. 531, and cases cited in note 1. Certainly, an implied waiver has no greater force or validity than an express one. To sum the matter up in a nutshell, in order that a waiver may be implied as necessarily incident to an act done by a party, it must affirmatively appear that the act itself is not one which he is at liberty to repudiate at pleasure. We are therefore forced to the conclusion that, however hurtful to the defendant the letters purporting to have been written by him may be, regarded as an admission of the righteousness of the plaintiff's claim, they do not amount to an estoppel, and accordingly, the charge of the court of which complaint is made was totally unwarranted. Its practical effect was to deprive the defendant of all benefit of the defense relied on, in the event the jury should believe these letters were written by the defendant himself or at his instance, and therefore operated greatly to his prejudice.

*Judgment reversed. All the Justices concurring, except Lumpkin, P. J., absent.*