41911.   WILLIAMS et al. v. RENTZ BANKING COMPANY.

SUBMITTED APRIL 6, 1966—DECIDED OCTOBER 13, 1966—
REHEARING DENIED DECEMBER 14, 1966—

*C. C. Crockett,* for appellants.

*Paul J. Jones, Jr., Eric L. Jones,* for appellee.

EBERHARDT, Judge. Giving the deposition of the defendant Felton Williams the construction in his favor wherever there is a contradiction or inconsistency in it, we are of the opinion that it demands a finding that the defendants made payments on the note sued on after it was signed.

Williams did not deny signing the note. He admitted it, though contending that he did so unwillingly, and that the amount of the note was $3,068 rather than $3,600. The note shows for itself what the amount was. He readily admits in his deposition that on the date of the note all previous notes owing to the bank by him and his brother were consolidated into the note which they signed on that day, and that the resulting renewal note represented all that he and his brother owed to the bank. While the deposition may indicate that the witness was a bit confused, it results only from the amount of the note—not as to his having signed the note or as to payments which he and his brother made on it. "In '63 we signed a note for $3,068; that's what we contended to sign. . . Q. That was a consolidation of the 1962, 1961, and all back— A. '59. Q. That brought it all up to date at that time, on June 22nd, 1963? A. That's right, the '59 note was $2,000, the 1960 note was $2,000, and I paid a payment on the '60, which left $1,700, which I renewed. Q. Well, you and Erastus signed that note on June 22, 1963? A. Yes, sir."

Concerning the payments he testified: "Q. Did you make any payments on this note? A. On the— Q. June 22, 1963 note? A. Yes, sir—no we didn't, because in '63, in '62, in '63 we had a $700 check there. Q. Now *in your answer* you alleged that you paid them on October 15, 1963, that you paid them

$300 on this note? A. Well it was *he and I together*. Q. Each of you? A. Paid $300. Q. I am talking about you now, you allege in your answer that on October 15, 1963, that you paid $300 on this note, is that correct? A. Yes, sir, that's correct, yes sir . . . Q. And you also allege that Erastus paid $300 on this note on October 15, 1963? A. That's right."

In their answer the defendants asserted that they had made payments of $300 each on October 15, 1963, which was at a time when they had previously renewed all of their indebtedness to the bank by execution of the note of June 22—that being the note sued on. At the time the payments were made the bank held no other note from them. There was never any withdrawal of the allegations of payments in the answer, and while the answer did not specifically allege that the payments were made on the note, resulting in our holding in the prior appeal that waiver of the duress was not shown by the pleadings, the defendant's testimony makes it certain that the payments were made on it.

The admission of payments in the answer, *together with the admission in the testimony* that they were made on this note, demands a finding that the payments were made on the note by the defendants after they had unwillingly signed it, if they signed unwillingly as they contend, and there is no escape from the waiver of any claim of duress. *Monk v. Holden,* 186 Ga. 549 (198 SE 697); *Augusta Motor Sales Co. v. King,* 36 Ga. App. 541 (137 SE 102); *Clifton v. Dunn,* 92 Ga. App. 520, 522 (88 SE2d 710). It unquestionably appears that the payments were made at a time when the defendants had full knowledge of all of the facts which they now claim and assert as to the alleged duress and as to the amount of the note. Cf. *Hoke v. City of Atlanta,* 107 Ga. 416 (33 SE 412); *McCarty v. Mobley,* 14 Ga. App. 225 (3) (80 SE 523); *Dunton v. Norton,* 42 Ga. App. 310 (155 SE 775).

Chief Judge Felton's dissent, urging the rationale of a plea of failure of consideration as applicable in connection with a plea of duress, is inapposite for the reason that the rules applicable to the pleas are wholly different. A plea of total failure of consideration includes a plea of *partial* failure (*A. E.*

*Speer, Inc. v. McCorvey,* 77 Ga. App. 715 (4) (49 SE2d 677)), while a plea of duress, a species of fraud, goes to the *whole* contract, just as does a plea of rescission for fraud (*Lytle v. Scottish American Mortg. Co.,* 122 Ga. 458, 466 (3) (50 SE 402)), or a plea of non est factum. *Code* § 81-701. But a waiver of the duress occurs when payments are voluntarily made on the note after its execution, just as would a defense of non est factum when it appeared that the defendant asked an indulgence of time when suit against him was threatened, and made payments on the note after that. *Anderson v. Mechanics Loan &c. Co.,* 58 Ga. App. 147 (198 SE 87), and Cf. *Yarbrough v. Seagraves,* 47 Ga. App. 436 (170 SE 553). This would not follow if we were dealing with a plea of failure of consideration, which, as above stated, includes a partial failure. *Pearson v. Brown,* 105 Ga. 802 (2) (31 SE 746).

Judge Jordan's dissent, urging as the law of the case the former ruling in *Williams v. Rentz Banking Co.,* 112 Ga. App. 384, supra, and particularly what was said at page 388 on the motion for rehearing, is likewise inapposite. In that case the court dealt only with the pleadings. Now we deal with the pleadings *and the evidence* submitted in connection with a motion for summary judgment.

In the former opinion this contention that the duress was waived by the subsequent payments was denied because *"it was not alleged that these payments were made on the note sued upon* which was executed on June 22, 1963," and for the reason that "no facts are set forth in the defendants' answer which show that they ratified the note sued upon after the removal of the alleged duress.".

Now we have not only the allegation in the answer of the payments made in October, after the note had been executed in June, but additionally the positive, unequivocal and uncontradicted testimony of the defendant Felton Williams that the payments were made upon the note of June 22, 1963—the note sued upon. The authorities above cited unqualifiedly stand for the proposition that payments on a note, voluntarily made after the alleged duress, constitute a waiver of the duress and a ratification of the note. Thus, the allegation of the payments in

the answer together with the testimony now demand a finding of waiver and ratification.

The law of the case doctrine would apply when no new facts appear that authorize a different view or result. But if, as to the pleadings or the evidence, or a combination of the two, the case is substantially different from what it was when on prior review, the former ruling is not the "law of the case." *Davis v. Wight,* 207 Ga. 590 (1) (63 SE2d 405); *McDay v. Long,* 67 Ga. App. 50, 53 (19 SE2d 436); *Ritzert v. Bulloch County,* 100 Ga. App. 686 (112 SE2d 235).

The evidence, clearly admissible (and there is no exception to it), made certain that which the pleadings had not done—that the payments were indeed made upon the note sued upon, and supplied the very deficiency but for which a waiver and ratification would have appeared on the former appeal. Cf. *Carter v. Carter,* 207 Ga. 460, 462 (b) (62 SE2d 171). Because of this material difference there can be no contrary law of the case in the former opinion.

*Judgment affirmed. Nichols, P. J., Frankum, Hall and Deen, JJ., concur. Felton, C. J., Bell, P. J., Jordan and Pannell, JJ., dissent.*

JORDAN, Judge, dissenting. I join in the dissent for the following reasons:

On the first appeal of this case this court reversed the judgment of the trial court. In our original opinion (*Williams v. Rentz Banking Co.,* 112 Ga. App. 384, supra), we held that the plea of duress was good as against the demurrer urged. *In its motion for a rehearing* the bank contended that even if the note was procured by duress it had been waived and the signatures ratified by reason of the fact payments had been made by the makers *on the note* after the duress had been removed. This court made a ruling on the contention made in the bank's motion for a rehearing and said on motion for rehearing, as follows:

"It is contended by counsel for the plaintiff bank on motion for rehearing that this court has overlooked the cases of *Augusta Motor Sales Co. v. King,* 36 Ga. App. 541 (137 SE 102) and *Monk v. Holden,* 186 Ga. 549 (2) (198 SE 697). These

cases, which are authority for the proposition that a note executed under duress may be ratified after the removal of the duress by renewing the note or making payment on it or by recognizing its validity in some other manner such as asking for an extension of time to make payment, have no application here since no facts are set forth in the defendants' answer which show that they ratified the note used upon after the removal of the alleged duress.

"The defendants in Paragraph 6 of the first amendment to their answer did allege that two payments had been made to the plaintiff bank on October 15, 1963, but it was not alleged that these payments were made on the note sued upon which was executed on June 22, 1963. To the contrary, it is clear from the allegations of Paragraphs 4 and 5 of the first amendment and from Paragraph 1 of the second amendment to the defendants' answer that these payments were made on a prior note executed on April 21, 1961; and this fact was twice recognized by counsel for the plaintiff bank in his original brief."

The holding in that case is to the effect that the defendants' answer properly alleged the defense of duress and that the defendants' allegations did not show that the two payments made to the bank on October 15, 1963, were made upon the note sued upon which was executed on June 22, 1963. We thus rejected the bank's contention that even if the note was procured by duress such had been waived because the defendant's answer showed that payments were made on the note sued upon. This holding, whether right or wrong, became the law of the case that duress was properly plead as a defense as alleged in the defendant's answer.

In the instant case, the bank contends that the duress, if any, was waived because the deposition by one of the defendants on the motion for summary judgment showed that the payments were made on the note sued upon. This deposition of one of the parties, being in opposition to the motion, must be construed in favor of the deponent. Giving it that construction, and in view of the pleadings which we have already construed as alleging that the payments were not made upon the note sued upon, we can only conclude that such deposition does

not, as a matter of law, show that the payments were made on the note sued upon so as to amount to a ratification.

We have previously held that duress was properly pleaded. The gist of the entire matter, it seems to me, now lies in whether we can say as a matter of law that a ratification such as would amount to a waiver of this defense is shown by one of the defendant's depositions. In my opinion the pleadings and depositions show a genuine issue of fact on this question and under such circumstances the trial court erred in granting plaintiff's motion for summary judgment.

Felton, C. J., and Pannell, J., concur in the foregoing dissent.

FELTON, Chief Judge, dissenting. I concur in Judge Jordan's dissent. I think that the question of whether the duress was waived is a jury question, both on the theory of the law of the case and because the law of the case is the correct law. The majority opinion says that one of the defendants admitted in his deposition that defendants paid a credit of $300 each on the note it is claimed was procured by duress. I think that statement is incorrect due to a misinterpretation of the deposition by the majority. I quote the part of the deposition in the record later.

This deposition under the law is supposed to be construed in favor of the defendants, not against them. I think that a jury could interpret the deponent's statements to mean that the defendants intended to make their payments, not on the note they claimed was void because obtained by duress, but on "the 1963 account," *meaning on whatever amount they truly owed the bank*. It is true that the deponent's testimony is contradictory but it shows that some of it should not be. It shows the confusion of the deponent. It could also show the meaning of what he was trying to say. For instance, once or twice he first stated that the credits were on the note sued on and then quickly changed his statement and tried to explain that they tried to make the payments before the renewal note was signed and the bank would not let them. That is a strange and unusual occurrence and the jury should have a look at it plus the other parts of the deposition. Another illustration of the confusion of the deponent is that he deposed that the defendants'

answer was that the payments were paid on the note sued on. That answer is not true and the answer shows it to be untrue. The part of the deposition used on the motion for a summary judgment is as follows and it speaks for itself: "A.—In '63, we signed a note for $3,068, that's what we contended to sign. Q. Now was that a consolidation of the '62 note and the 1961 note? A. Yes, sir, all the way through. Q. Then that was all the money that you owed them at that time $3,068—whatever the amount of the note, what it was? A. Yes sir, that's what they said it was. Q. That was all of the amount that you owed? A. Yes, sir. Q. That was a consolidation of the 1962, 1961 and all back?—A. —'59— Q. That brought it all up to date at that time, on June 22nd, 1963? A. That's right, the '59 note was $2,000, the 1960 note was $2,000 and I paid a payment on the '60, which left $1,700 which I renewed. Q. Well, you and Erastus signed that note on June 22nd, 1963? A. Yes, sir. Q. And that brought all your notes together and you only owed them this one note, and that's all that they contended, is that right? A. Well— Q. I am talking about the note now, disregarding the amount of the note, if it was $3,600 or $3,068? A. That's right. Q. If you signed this note June 22, 1963, that was a consolidation of all your past indebtedness? A. All the past indebtedness, both of us. Q. And you and Erastus owe no more than this note, is that correct? A. That was all, that was all, yes sir. Q. Did you make any payments on this note? A. On the— Q. June 22, 1963 note? A. Yes sir— no we didn't because—in '63—in '62—in '63 we had a $700 check there. Q. Now in your answer, Felton, you allege that you paid them on October 15, 1963, that you paid them $300 on this note? A. Well it was—he and I together— Q. Each of you— A. Paid $300. Q. I am talking about you now, you allege in your answer that on October 15, 1963, that you paid $300 on this note, is that correct? A. Yes, sir, that's correct, yes, sir. Q. That was paid on this note, is that correct? A. And $300— Q. And you also allege that Erastus paid $300 on this note on October 15, 1963? A. That's right. Q. Did you all go to the bank together? A. Yes, sir. Q. And each paid $300? A. Yes, sir, we had check for $700,

we just split the check, the check was for $707.70. Q. This was credited on this note because all your past notes had been consolidated into this one note? A. Yes sir, yes, sir. Q. And you knew that this was being credited on this one note, didn't you? A. Well o- on this $3,068 note? Q. Yes. A. Yes, sir. Q. Even though you had signed this note unwillingly? A. I did—we did, yes we did. Q. You did sign it unwillingly? A. Yes, sir. Q. But you did make the payment of $300 on it? A. Well—we had to because we had given the note. Q. You did make the payment? A. When we sent this payment down there before this note was signed, they refused to take the $700, and later on they sent word for us to come by and they would give us a statement then, and we carried this check back there and then after we had signed the note, they taken that check and given us credit on the '63 account up there, yes, sir. . . Q. Then, the only transaction that you or Erastus have had since June 22, 1963, with the Rentz Banking Company was payments of $300 of each on October 15, 1963, is that correct? A. That's right. Q. And this was credited on your note dated June 22, 1963? A. That's right. . . Q. Then June 22, 1963, you renewed that note, you and Erastus renewed that note? A. That's right. Q. Forgetting about the duress a minute, that note was in the amount of $3,658.55— A. $3,068, that's what it supposed to have been. Q. You have seen a copy of the note, haven't you? A. I've seen a copy of it, but that $3,600— Q. You've seen a copy of that note haven't you—By Mr. Crockett: Wait, he hasn't finished answering that. A. We signed a note for $3,068. Q. The note that is attached to the petition is for $3,658, isn't it? A. Well on the suit but the note calls for $3,068. Q. You mean the suit was filed for $3,068? A. The suit was filed for $6,000— I mean for $3,668, but the note say $3,068. Q. Now that note that you signed was to consolidate all of your past debts? A. Everything from— Q. Your 1961 notes and all of this? A. From the 1959 notes, right on up. Q. And that was all you owed the bank at that time? A. At that time; yes, sir. Q. And that was all that you and Erastus owed the bank at that time? A. Yes, sir. Q. Coming up to your transaction

since, the note was executed on June 22nd, —one more thing on this, you stated that there was several people at the time you executed this note, is that correct? A. Yes, sir. . . Q. Now, the transactions that you have had since June 22, 1963, on October 15, 1963, you and Erastus, both made a payment of $300 each, is that correct? A. Yes, sir. Yes, sir."

In my opinion the ruling by the majority is based on false premises. (1) There is no admission in the answer that credits were paid *to be applied on the note sued on.* (2) The answer simply shows that the credits paid were paid to the bank *after the note* (allegedly procured by duress which is admitted by the bank for the sake of the summary judgment proceeding) was signed. The consequence of the payments of credits after the note was signed is *not* that they were paid to be applied *on* the note. A jury could find that under the circumstances shown the credit was to be applied on the *true* amount of indebtedness to the bank. The majority ruling means that a payment to the bank of a credit *after* the note was executed is either an admission that the credit was paid to be applied on the note or that the payment after the note was signed *had the effect of being* a credit to be applied on the note simply because the credit was paid after the note was signed. I say that both of these conclusions are wrong. The depositions of one of the defendants, construed in his favor on summary judgment, mean that the payments of credits were made *to be applied to the correct* indebtedness to the bank and *not* on a note which the defendants were forced to sign for *more* than the amount due. What is said above is true despite the fact that the defendant making the deposition was in error as to the *amount of the note signed* and as to *what was admitted in the answer.* The record shows that truth as to these matters and the facts do not demand a finding that the defendant was wilfully swearing falsely. It is plain that he was mixed up and confused about some of the facts.

I am authorized to say that Bell, P. J., concurs in this dissent except that portion which is grounded on the law of the case. Jordan and Pannell, JJ., concur in this dissent.