**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**MCMILLIAN and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 28, 2019**

# In the Court of Appeals of Georgia

A19A0467. ROWLES v. ROWLES.

A19A0719. ROWLES v. ROWLES.

McMillian, Judge.

After the trial court partially set aside a final divorce decree and judgment on the grounds that the husband had only agreed to its terms because the wife had threatened to disclose the husband's affair to his employer, both parties appealed. The wife contends that there was no duress as a matter of law and that the divorce decree should have been upheld while the husband asserts that because of the duress the entire divorce decree should have been set aside, not just the portions addressing the custody of the children. Because our Supreme Court has held that a judgment may only be set aside for duress when the complaining party was prevented from asserting

a defense and the husband had the opportunity to appear and raise any defenses before entry of judgment, the trial court erred in partially setting aside the judgment.

Sean Rowles (the "Husband") and Roberta Rowles (the "Wife")[1] were first married in 2005. They had two children during the time they were married and then divorced for the first time in February 2012 ("First Divorce").[2] They remarried in November 2012, but then they divorced again in July 2014 after the Wife found out about the Husband's continuing infidelity with a co-worker ("Second Divorce"). In January 2016, the Husband filed a petition for contempt based on the Wife's alleged failure to abide by the terms of the visitation provisions of the Second Settlement Agreement incorporated into their Second Divorce Decree. A few weeks later, the Husband also filed a motion to set aside the judgment, alleging that he agreed to the

---

[1] Following our grant of their applications for review, the Husband and Wife each timely filed notices of appeal to this Court. The Wife's appeal was docketed in this Court as Case No. A19A0467, and the Husband's appeal was docketed as Case No. A19A0719. We have consolidated these appeals for our review.

[2] Both parties state in their briefs on appeal that they were first divorced in October 2011, but the record shows that the final judgment of divorce was not entered until February 2012. This discrepancy appears related to the divorce law of Rhode Island where the first divorce was entered and is not relevant to this appeal.

terms of the Second Settlement Agreement[3] under duress due to the Wife's threats to expose his extra-marital affairs to his boss and others, which could have resulted in his termination from his job.[4]

The trial court held a hearing on the motion to set aside,[5] during which the Husband, the Wife, and three other witnesses testified. The Husband testified that he entered into the Second Settlement Agreement because he thought that he would lose his job and deferred compensation if the Wife told his employer about the affair. Further, the Husband testified that it was only after the Wife ceased allowing him to visit with his children that he sought the aid of an attorney and filed the petition for contempt and motion to set aside, and that as of the date of the hearing he had not

---

[3] Among other things, under the Second Settlement Agreement, the Wife received 60 percent of the parties' assets, 100 percent of the proceeds of the sale of their Georgia residence, and about $300,000 in stock options. The Agreement also required the Husband to pay the Wife 60 percent of his salary "[f]or the rest of his working career[.]"

[4] At the time, the Husband was Chief Operating Officer at Citizens Bank and stood to lose approximately $3 million dollars in deferred compensation if he were fired. The Wife disputes making threats to expose his affairs to his employer.

[5] The parties agreed that a hearing on the contempt petition would be held at a later date, pending evaluation of the children by an expert.

seen his children in six months although previously he had seen them every few weeks if not more frequently.

Subsequently, the trial court granted the motion to set aside as to the custody, parenting time, and visitation provisions of the Second Settlement Agreement but denied the motion as to the remaining financial portions of the agreement.[6] After the trial court held a five-day trial on the issues of custody, child support, and visitation, the trial court entered a "Final Order" awarding sole legal and physical custody of the children to the Husband. The Wife was granted supervised visitation for six months and then unsupervised visitation thereafter. The Wife was also required to pay child support to the Husband.

The Wife filed a motion for new trial, which she twice amended. The trial court denied the motion but entered an amended final order in which it granted the Husband's motion to relocate the children to Maryland, among other things. Later, the trial court granted the Husband's motion for attorney fees and awarded him

---

[6] The trial court also entered an order on the Husband's contempt petition, finding that it was in the minor children's best interests for the Husband to have supervised visitation while the case was pending. Although not the subject of this appeal, the Wife also filed a petition for contempt, which the trial court denied.

4

$112,189.10 in attorney fees and expenses under both OCGA §§ 19-6-2 and 9-15-14 (b). These appeals followed.

*Case No. A19A0467*

1. The Wife first argues that the trial court lacked jurisdiction to rule on the motion to set aside because it was not filed in the same term in which the judgment was rendered and was not filed as a separate action.

Motions to set aside are governed by OCGA § 9-11-60, and subsection (f) specifically sets out a three-year time limit for bringing a motion to set aside based on fraud under OCGA § 9-11-60 (d) (2), such as the one filed by the Husband in this case.[7] The Husband's motion, which was filed within two years of the entry of the Second Divorce Decree, was thus timely. See *Jones v. Jones*, 298 Ga. 762, 765 (1) (787 SE2d 682) (2016) ("Except for those alleging lack of jurisdiction, [a motion to set aside under OCGA § 9-11-60] must be made within three years of the entry of the challenged judgment.").

---

[7] Subsection (f) provides in pertinent part: "A judgment because of lack of jurisdiction of the person or subject matter may be attacked at any time. . . . In all other instances, all motions to set aside judgment, shall be brought within three years from entry of the judgment complained of."

5

The record also belies the Wife's contention that the trial court lacked jurisdiction to rule on the motion because it was improperly filed as part of a contempt action. Here, the Husband filed the motion to set aside in the court that rendered the Second Divorce Decree under the same civil action case number. The fact that the Husband's contempt petition was filed before the motion to set aside and also as part of that same civil action does not mean, as the Wife seems to argue, that the motion to set aside was filed as a motion in a separate contempt action. Although the Wife points to the language in subsection (a) that "judgments shall be subject to attack only by a *direct proceeding*" that does not mean the Husband was required to file a separate lawsuit to set aside the decree.[8] See *Buttacavoli v. Owen, Gleaton, Egan, Jones & Sweeney LLP*, 331 Ga. App. 88, 91 (1) (769 SE2d 794) (2015) ("If one is dissatisfied with a judgment one does not merely file a new action against the other party or his counsel. . . . Instead, one must attack the prior judgment by a direct proceeding in the trial court where the prior suit was litigated.") (citation omitted);

---

[8] OCGA § 9-11-60 (e) now expressly prohibits the use of a complaint in equity to set aside a judgment. This is a change from the former law. See *Lee v. Restaurant Mgmt. Svcs*. 232 Ga. App. 902 (503 SE2d 59) (1998); Ga. L. 1986, p. 295. Further, subsection (f) provides that a motion to set aside may be served by the same means as a complaint "if it cannot be legally served as any other motion." This is also a change from the former law, which *required* a separate complaint and proper service for a complaint in equity. See Ga. Code Ann. § 81A-160 (f) (1966).

see generally *Ramchandani v. State Bank & Trus. Co.*, 324 Ga. App. 235, 241 (2), n.18 (749 SE2d 797) (2013) (a party cannot collaterally attack a non-void judgment "in a separate lawsuit, but could only attack the order through a direct proceeding brought in the trial court that entered the judgment, pursuant to OCGA § 9-11-60 (b) and (d)."). Accordingly, this enumeration of error is without merit.

2. Turning to the merits,[9] the Wife asserts that the trial court erred by setting aside the Second Divorce Decree on the grounds that the Husband had executed the the Second Settlement Agreement under duress. We agree.

"Duress is but a species of fraud where one is induced contrary to one's will from presenting a defense to a suit." (Citation omitted.) *Frost*, 235 Ga. 672, 674 (2) (221 SE2d 567) (1975). "Under Georgia law, duress consists of imprisonment, threats, or other acts, by which the free will of the party is restrained and his consent induced." *Hampton Island, LLC v. HAOP, LLC*, 306 Ga. App. 542, 544 (2) (702 SE2d 770) (2010). "A duress claim must be based on acts or conduct of the opposing party which are wrongful or unlawful. Georgia courts are reluctant to void contracts, and

---

[9] Both parties agree that the trial court was not authorized under OCGA § 9-11-60 (d) (2), to set aside only part of the final divorce decree, the dispute being whether the court should have set aside all or none of it. However, because we reverse the trial court's order on the merits, it is unnecessary for us to parse the issue of the trial court's authority to set aside only part of a divorce judgment.

7

we have found no Georgia decision voiding a contract on the theory of economic duress." Id. at 544-45 (2).

But the appeals in this case concern a judgment that was set aside because of duress, not just a contract. Under these circumstances, our Supreme Court has imposed an additional requirement for setting aside a judgment: "Before . . . a judgment will be set aside for duress, it must appear that the complainant had a good defense which [he] was prevented from asserting at the original hearing or trial." *Frost*, 235 Ga. at 675 (2). In *Frost*, the Supreme Court remanded the case to determine if the wife, who was threatened with loss of custody of her young child, had signed a waiver of service and had not received notice of the divorce proceedings, which would have prevented her from appearing and asserting any available defenses. Id. at 675-76 (2). See also *Keith v. Keith*, 231 Ga. 230, 232 (2) (200 SE2d 891) (1973) (divorce decree set aside where wife was prevented from retaining counsel to protect her interests due to the husband's fraud and misrepresentation and evidence also showed husband beat wife and children in order to have them comply with his wishes).

Here, the Husband repeatedly testified that he acquiesced to the Wife's demands and signed the Second Settlement Agreement because he was afraid of

8

losing his job and significant amounts of deferred compensation, and the trial court found that the Wife made the threats to gain a financial advantage.[10] But the record also shows the Husband not only participated in the proceedings, he and the Wife actually meditated the custody and visitation portions of the Second Divorce Decree Agreement that the trial court found were the product of duress,[11] and he testified that prior to the Wife abruptly cutting off visitation, he believed they were broadly following the parenting plan they had agreed to during the meditation. Further, the Husband does not point to a good defense that he was prevented from asserting, and the trial court essentially found as much by noting that it was the Husband's own conduct and not duress that brought about the unfavorable financial provisions of the Second Divorce Agreement. Thus, due to the Husband's own actions, he found himself in an unfavorable and disadvantageous bargaining position during the Second

---

[10] We note that it has long been held that "[a] threat of causing the defendant to lose his job or his fear of such loss is not duress which would void the contract," when the threat is not otherwise wrongful or unlawful. *Atlanta Life Ins. Co. v. Mason*, 89 Ga. App. 319, 321 (79 SE2d 352) (1953). But we need not definitively decide whether the Wife's threats amounted to duress because even if considered to be duress, the Husband has failed to show that he was precluded from asserting a defense as a result.

[11] The trial court noted in the order on the motion to set aside that the Second Divorce Decree purported to incorporate a parenting plan but that it was not in the record.

9

Divorce Proceedings and the fact that the Wife had the upper hand does not mean the resulting agreement and judgment were subject to being set aside.

And despite the surface similarity in some of the facts, *Young v. Young*, 188 Ga. 29, 34 (3) (2 SE2d 622) (1939) does not compel a different result. First, as to the facts, the wife's threats in *Young* were two-fold – to attempt to have husband fired from his job and to harm the couple's child. However, unlike here, the wife's threat to have her husband fired from his job was not based on threats of disclosing truthful information, but getting her father to "unlawfully interfere" with her husband's position and get him fired. Id. at 37. And the procedural differences in the case are also important. In this case, we are reviewing an order partially granting a motion to set aside a judgment, whereas in *Young*, the question was whether the denial of the wife's demurrer to the husband's equitable complaint should be upheld. Thus, in *Young,* we were merely deciding whether the case could go forward, and in answering that question in the affirmative, we noted that while the allegations of the complaint were sufficient to withstand the demurrer, the facts of duress were not "exceedingly strong." Id at 36-37. Finally, unlike in *Young*, the Husband in this case appeared and participated in the Second Divorce Proceedings, and was not prevented from appearing to put forth a defense.

10

Based on the foregoing, the Second Divorce Decree was not subject to being set aside due to duress. Accordingly, the trial court's order setting aside the Divorce Decree must be reversed.[12]

3. The Wife also argues that the trial court erred by awarding attorney fees. "As a general rule, Georgia law does not provide for the award of attorney fees even to a prevailing party unless authorized by statute or by contract." (Citation and punctuation omitted.) *Cothran v. Mehosky*, 286 Ga. App. 640, 641 (649 SE2d 838) (2007). Here, the Husband sought, and the trial court awarded, attorney fees under both OCGA §§ 9-15-14 and 19-6-2. We turn first to the award under OCGA § 19-6-2.

OCGA § 19-6-2 (a) authorizes attorney fees against either party, upon consideration of their financial circumstances, where "the action is for alimony, divorce and alimony, or contempt of court arising out of either an alimony case or a divorce and alimony case[.]" See also *Viskup v. Viskup*, 291 Ga. 103, 107 (3) (727 SE2d 97) (2012). An award of attorney fees under OCGA § 19-6-2 is not predicated on the wrongdoing of either party. *Cothran*, 286 Ga. App. at 641. Here, both parties

_____

[12] We would caution that our holding should not be read too broadly, and nothing in our opinion should be read to prevent the Husband from seeking a modification of custody or visitation or the trial court from modifying custody or visitation based on the best interest of the children. Our holding is simply that the Second Divorce Decree was not subject to being set aside due to duress.

11

filed petitions for contempt of the original decree and both sought attorney fees. The transcript from the hearing on the motion for fees shows that the issues related to the various motions, both the motion to set aside and the petition for contempt, had been decided by the time the attorney fee award was entered, and the record leaves little room for doubt that the various issues in this case had become intertwined. Further, the trial court made its order to reimburse fees and expenses incurred "during this litigation" and did not limit the award to the motion to set aside, and the trial court properly considered the parties' relative financial positions in awarding fees under OCGA § 19-6-2. We will not disturb that finding absent an abuse of discretion, which we do not find here. Accordingly, the fee award was authorized under OCGA § 19-6-2. *Waits v. Waits*, 280 Ga. App 734, 737 (634 SE2d 799) (2006) (award of attorney fees under OCGA § 19-6-2 authorized when declaratory judgment action was "part and parcel" of contempt action); see also *McDonough v. O'Connor*, 260 Ga. 849, 850 (400 SE2d 310) (1991) (trial court had discretion to award attorney fees incurred in modification of divorce decree under OCGA § 19-6-2 when the underlying action also was for contempt of divorce decree).

However, that does not end our analysis because by its plain terms, OCGA § 19-6-2 authorizes only an award of attorney fees, and the trial court also awarded the

12

reimbursement of other expenses in its order. We, thus, must examine whether those expenses may have been authorized under OCGA § 9-15-14 (b).[13] Here, the trial court found that the Wife's behavior in alienating the children, her refusal to allow the Husband to visit with the children, and her unfounded allegations of child abuse had greatly expanded the litigation, were substantially lacking in justification, and were interposed for delay and harassment. Although those findings were supported by the record, the trial court did not go on to make a finding as to how the award was limited to the prohibited conduct. See *Roylston v. Bank of America, N. A.*, 290 Ga. App. 556, 562-63 (2) (a) (660 SE2d 412) (2008) ("In cases involving OCGA § 9-15-14 (a) or (b), the trial court must limit the fees award to those fees incurred because of the sanctionable conduct. Lump sum attorney fees awards are not permitted in Georgia.") (citation and punctuation omitted.). Accordingly, the award must be vacated to the

---

[13]OCGA § 9-15-14 provides:
In any civil action in any court of record of this state, reasonable and necessary attorney's fees and expenses of litigation shall be awarded to any party against whom another party has asserted a claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim, defense, or other position.

13

extent expenses other than attorney fees were awarded, and the case remanded for further proceedings consistent with this opinion.

4. Based on our holding in Division 2, the Wife's remaining enumerations of error are moot, and we need not consider them.

*A19A0719.*

5. Based on the foregoing, the errors raised in the Husband's appeal in A19A0719 are moot.

*Judgment affirmed in part, reversed in part, vacated in part, and case remanded with direction. Goss, J., concurs. McFadden, P.J., concurs fully in Division 1 and dissents in Divisions 2, 3, 4, and 5.\**

**\*DIVISIONS 2, 3, 4, AND 5 OF THIS OPINION ARE PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2.**

A19A0467, A19A0719. ROWLES v. ROWLES; and vice versa.

MCFADDEN, Presiding Judge, concurring in part and dissenting in part.

While I concur in Division 1 of the majority opinion, I respectfully dissent to the remaining divisions.

This divorce case involves the wife's credible threats to expose salacious information about the husband to his employer in an attempt to get him fired unless he agreed to onerous terms of settlement, including giving the wife a significant portion of his earnings in perpetuity, severely limiting his access to his young children, and forcing him to take steps to deprive the children of their rights to dual Australian citizenship, including seeking to relinquish the citizenship that already had

been conferred upon one child. The trial court found that the wife's behavior was wrongful and that the husband had entered into the settlement agreement under duress. She was well within her discretion to do so.

But the trial court did not address whether the husband was prevented from asserting this defense before the trial court entered judgment on the decree. That question must be addressed before the trial court can decide whether the judgment should be set aside for duress. Moreover, the trial court was not authorized to set aside only a part of the divorce decree or to apply the doctrine of unclean hands to leave in place the decree's financial provisions. So I would vacate both the set-aside order and the attorney-fee order in their entireties and remand for further proceedings.

1. *Set-aside order*.

The trial court did not err in finding that the evidence presented at the hearing showed that the husband had signed the agreement under duress, which can be shown by "a threat coupled with an apparent intent and ability to carry out the threat so that the will of the other is overcome." *Frost v. Frost*, 235 Ga. 672, 675 (2) (221 SE2d 567) (1975). Our Supreme Court considered a similar issue in *Young v. Young*, 188 Ga. 29 (2 SE2d 622) (1939), which involved a "wife [who] threatened her husband with loss of his job if he did not agree to her terms for alimony and child support."

2

*Frost*, 235 Ga. at 675 (2) (describing *Young*, supra). Holding that "threats of unlawful interference with [the husband's] job[ ] may amount to duress[,]" the Supreme Court concluded that the husband's petition to set aside a judgment based on an alimony and child custody agreement could proceed to a jury. *Young*, 188 Ga. at 36-37 (3). Notably, the father had alleged facts indicating that the wife "would and could carry out her threat[.]" *Frost*, 235 Ga. at 675 (2) (discussing *Young*, supra). See *Blalock v. Barrett*, 28 Ga. App. 444, 444-445 (111 SE 697) (1992) (to constitute duress, threat to job cannot be mere empty threat; because party asserting duress as defense in contract action did not allege that plaintiff "could have made this threat effective or even that [defendant] feared that [plaintiff] could or would cause him to lose his position[,]" he "failed to set forth facts showing duress in law").

As in *Young*, the husband in this case alleged that the wife would and could carry out her threat of having the husband fired from his job, and the trial court found that the husband "and his witnesses put forth very convincing testimony as to the [wife's] stated intent, actual intent[,] and ability to expose and ruin him in her efforts to obtain a financial advantage in the parties' [a]greement." The hearing evidence authorized that finding.

3

So the decision in *Young* supports the trial court's conclusion that the wife's actions constituted duress. *Young*, 188 Ga. at 34-37 (3). It is true, as the majority notes, that the husband in *Young* was also subjected to other coercive actions by the wife — not only threats to have him fired but also threats to harm their child. Id. at 36 (3). But the *Young* decision does not suggest that the additional threats were required to find duress. Rather, that decision indicates that either the threat to the child or the threat to the job could constitute duress. See id.

The majority also notes that a threat of causing one to lose a job cannot constitute duress unless the threat is wrongful or unlawful. The requirement that the threatening conduct be "wrongful or unlawful" is found in many Georgia decisions. See, e.g., *Hampton Island, LLC v. HAOP, LLC*, 306 Ga. App. 542, 544-545 (2) (702 SE2d 770) (2010); *Charter Medical Mgmt. Co. v. Ware Manor*, 159 Ga. App. 378, 381 (3) (283 SE2d 330) (1981). These decisions use the disjunctive "or," and in applying this rule we need only consider whether either requirement — wrongful *or* unlawful — was met, just as we would in interpreting a legal text under the "Conjunctive/Disjunctive Canon" described in Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 116-125 (2012). See generally *Hardaway Co. v. Amwest Surety Ins. Co.*, 263 Ga. 698 (436 SE2d 642) (1993)

4

(applying rule derived from caselaw that was framed in disjunctive to hold that only one of two enumerated legal requirements need be met). In other words, we should not conflate "wrongful" conduct with "unlawful" conduct.

Even if the wife's actions were not unlawful, I cannot agree that the trial court abused her discretion in finding them to be wrongful. While not using the word "wrongful," the trial court, as factfinder, determined that the wife had threatened to "destroy" or "ruin" the husband and that her actions were "coercive" and "vindictive." The Second Restatement of Contracts states that a threat is improper, for purposes of determining whether there is duress, "if . . . the threat itself would be a crime or a tort if it resulted in obtaining property[.]" Restatement (Second) of Contracts § 176 (1) (a) (1981). A threat like the one before us could constitute the crime of theft by extortion if it resulted in obtaining property rather than obtaining a signature on an agreement. See OCGA § 16-8-16 (a) (3) ("A person commits the offense of theft by extortion when he unlawfully obtains property of or from another person by threatening to . . . [d]isseminate any information tending to subject any person to hatred, contempt, or ridicule or to impair his credit or business repute[.]"). Similarly, under certain circumstances such a threat could constitute the tort of intentional interference with employment relationship. See *Batayias v. Kerr-McGee*

*Corp.*, 267 Ga. App. 848, 849-850 (1) (601 SE2d 174) (2004) (party with no authority to discharge employee may be liable for tortious interference with employment relationship if, with intent to injure employee, he maliciously or without just cause procures employee's discharge from employment). The trial court was not required to find that the wife had actually committed a crime or tort in this case to find her conduct wrongful. Rather, the elements of these crimes and torts serve to illustrate the type of behavior that could fall within the broader concept of "wrongful," separate and apart from "unlawful."

I acknowledge that in *Tidwell v. Critz*, 248 Ga. 201, 203 (1) (282 SE2d 104) (1981), our Supreme Court held that "the threat of losing a job or fear of such loss is not duress which will void a contract." That decision, however, does not overrule *Young*, and its facts are distinguishable. *Tidwell* concerned one party's threat to end their existing business association if the other party did not sign an employment agreement, a threat that does not implicate either tortious or criminal behavior. The nature of the wife's threat, to reveal compromising material to the husband's employer with the intent of getting him fired, is qualitatively different than the threat in *Tidwell*.

Simply put, the trial court found, with support from the hearing evidence, that the wife's actions — threatening to get the husband fired from his job if he did not give up a significant percentage of his income, his access to his children, and his children's own ability to avail themselves of dual citizenship in the future — were egregious. The evidence permitted the trial court to so find and to find that the husband signed the agreement under duress.

Nevertheless, as the majority points out, just because the agreement underlying the judgment was the product of duress does not automatically mean that the trial court could set aside the judgment for duress. Our Supreme Court's decision in *Frost v. Frost*, 235 Ga. at 675 (2), prevented the trial court from setting aside the judgment unless the husband was prevented from asserting his defense of duress when the trial court entered the divorce decree. Given that, in the trial court's view, the settlement agreement was a product of duress even though it arose through mediation, it follows that the same duress might have prevented the husband from challenging that agreement when it was presented to the trial court for entry of a judgment. But the trial court's order is silent on the point. So, as in *Frost*, supra, this case should be remanded for further findings on whether the husband was prevented from asserting his duress defense at that time.

7

In addition, the trial court only set aside a portion of the divorce decree, ruling that the husband engaged in "misconduct" that precluded him from setting aside other aspects of the decree under the doctrine of unclean hands. It appears that by "misconduct" the trial court meant the husband's infidelity, although her order did not identify specific acts of misconduct.

But the doctrine of unclean hands applies to petitions brought in equity, and a motion to set aside under OCGA § 9-11-60 (d) is not such a petition. See OCGA § 9-11-60 (e) ("The use of a complaint in equity to set aside a judgment is prohibited."); *Holmes v. Henderson*, 274 Ga. 8, 8-9 (1) (549 SE2d 81) (2001) ("The equitable doctrine of unclean hands . . . has no application to an action at law."); *Higdon v. Higdon*, 321 Ga. App. 260, 262 (1) (a) (739 SE2d 498) (2013) ("'Unclean hands' is a shorthand reference to OCGA § 23-1-10, which states: 'He who would have equity must do equity and must give effect to all equitable rights of the other party respecting the subject matter of the action.'").

Moreover, "a plea of duress . . . goes to the whole contract," *Williams v. Rentz Banking Co.*, 114 Ga. App. 778, 781 (152 SE2d 825) (1966) (emphasis omitted), and "OCGA § 9-11-60 (d) . . . does not authorize a court to revise or amend part of a judgment while leaving the judgment intact." *Epstiner v. Spears*, 340 Ga. App. 199,

8

202 (1) (796 SE2d 919) (2017). The trial court's set-aside order is inconsistent with these principles. For these reasons, the order should be vacated in its entirety and the case remanded for the trial court to reconsider whether to set aside the divorce decree.

2. *Attorney-fees order.*

I agree that the attorney-fees award should be vacated for the reasons explained by the majority. The entire award must be vacated for another reason as well. The trial court based her award of OCGA § 19-6-2 attorney fees on the parties' respective financial positions as determined by the parties' settlement agreement. As explained above, that agreement was the product of duress and so the decree based on it must be set aside and the case must be remanded for further proceedings. Because the outcome of those further proceedings could affect the parties' financial positions, the trial court should reconsider the attorney-fees award on remand.

9